[Civ. No. 467.　Third Appellate District.—October 2, 1908.]

## THE PEOPLE ex rel. FRANK MATTISON, Appellant, v. A. B. NYE, Respondent.

STATE CONTROLLER—VACANCY—MODE OF FILLING—CONSTITUTIONAL LAW —POWER OF LEGISLATURE.—Though the office of state controller is fixed by the constitution, no mode of filling a vacancy therein is provided for in the constitution; and the legislature has constitutional power to specify what shall constitute a vacancy therein, and to provide how it shall be filled. The provisions of section 996 and 1001 of the Political Code regulating those matters are constitutional and valid enactments.

ID.—CONSTRUCTION OF CONSTITUTION—POWER OF GOVERNOR—"CONSTITUTION AND LAW"—ALTERNATIVE.—In the provision of section 8 of article V of the constitution that "when any office shall from any cause become vacant and no mode is provided by the constitution and law for filling such vacancy, the governor shall have power to fill such vacancy," etc.—the words "constitution and law" obviously mean the constitution or law.

ID.—VACANCY IN OFFICE OF CONTROLLER—DEATH AFTER ELECTION FOR SECOND TERM—APPOINTMENT FOR "UNEXPIRED TERM."—When a

vacancy in the office of controller occurred after his election for a second term by death before qualification, an appointment for the "balance of the unexpired term," under section 1001 of the Political Code, would end on the day before the beginning of the second term for which he was elected.

ID.—LOCUM TENENS.—The appointee for the unexpired term, in so far as he holds the office for any time beyond the end of the unexpired term, holds it as a mere *locum tenens,* under section 879 of the Political Code, by virtue of public necessity, until the appointee to fill the vacancy in the new term shall qualify. Such vacancy is not affected by such holding.

ID.—VACANCY IN SECOND TERM—FAILURE AND INABILITY TO QUALIFY—BEGINNING OF VACANCY—POWER OF APPOINTMENT.—The vacancy in the second term of the deceased controller arose by reason of his failure to qualify therefor and his inability to do so after his death. It had its existence from the beginning of the second term and might be filled on the day of such beginning by appointment of the governor.

ID.—DATE OF BEGINNING OF CONTROLLER'S TERM.—Under the constitution, the term of the controller begins on the first Monday after the first day of January following his election.

ID.—CONSTRUCTION OF CONSTITUTION—LANGUAGE OF APPLICABLE SECTIONS TO BE CONSIDERED TOGETHER.—In determining the meaning of the constitution as to the beginning of the controller's term, the language of each section applicable thereto must be considered together, and effect given to each.

ID.—"FROM AND AFTER" CONSTRUED AS MEANING "ON AND AFTER."—Although the term of the controller is made the same as that of the governor, yet the general rule of exclusion of the first day "from and after" a day fixed, whatever effect it may have upon the governor's term, in view of other special language applicable to him, besides that of section 2 of article V, that "he shall hold his office four years from and after the first Monday in January next after his election," the exclusion of the first Monday cannot apply to the controller, since an inclusive intention clearly appears in section 20 of article XX, making his term "commence on the first Monday," etc., and therefore the words "from and after" must be construed as meaning "on and after," as applied to the controller's term.

ID.—PRACTICAL CONSTRUCTION OF CONSTITUTION.—The fact that ever since the adoption of the constitution all executive officers of the state, other than the governor and lieutenant-governor, have been installed in office on the first Monday after the first day of January, next after their election, while not controlling, is entitled to great weight as an executive and contemporaneous construction of the constitution, in the effort to ascertain the meaning of the instrument.

APPEAL from a judgment of the Superior Court of Sacramento County.  C. N. Post, Judge.

The facts are stated in the opinion of the Court.

U. S. Webb, Attorney General, Timothy J. Lyons, Arthur M. Seymour, and Garret W. McEnerney, for Appellant.

The enactment of the provisions of section 869 of the Political Code as to vacancies in the office of controller and the filling of the same under section 1001 thereof is constitutional and valid. (*People* v. *Budd*, 114 Cal. 172, 45 Pac. 1060.) One who holds by appointment only, for "the balance of the unexpired term," is limited to that express term, and if he holds thereafter as a *locum tenens*, under section 879 of the Political Code, he holds for no fixed tenure, but only until his successor is legally appointed and qualified to fill the vacancy in the new term  arising from failure of the elected controller to qualify. (*People* v. *Taylor*, 57 Cal. 620; *French* v. *County of Santa Clara*, 69 Cal. 519, 11 Pac. 30; *People* v. *Ward*, 107 Cal. 236, 40 Pac. 538; *Adams* v. *Doyle*, 139 Cal. 678, 73 Pac. 582; *State* v. *Cocke*, 54 Tex. 484; *County of Scott* v. *Ring*, 29 Minn. 398, 13 N. W. 181, and cases cited.) The second commission from Governor Pardee to Mr. Nye was premature, and without authority of law.  The new term of the controller did not begin under the constitution until Tuesday, the eighth day of January.  The words ":from and after the first Monday" exclude the first Monday. (*People* v. *Campbell*, 138 Cal. 11, 70 Pac. 918; *Best* v. *Polk*, 18 Wall. 112, 21 L. ed. 805-808; Throop on Public Officers, sec. 317; 14 Am. & Eng. Ency. of Law (word "From"), p. 563 et seq., and notes; 23 Am. & Eng. Ency. of Law (word "Time"), p. 211 et seq., and notes.)   The appointing power cannot forestall the rights and prerogatives of his successor. (Mechem on Public Officers, sec. 133; *Ivy* v. *Lusk*, 11 La. Ann. 486; *State* v. *Meehan*, 45 N. J. L. 189; *State* v. *Love*, 39 N. J. L. 14; *People ex rel. Sweet* v. *Ward*, 107 Cal. 236, 40 Pac. 538.) In construing constitutions the most general provisions must yield to the particular and special provision declared to be applicable to the particular case. (*Warren* v. *Shuman*, 5 Tex. 441; *Gulf etc. Ry. Co.* v. *Rambolt*, 67 Tex. 656, 4 S. W. 356; *Martin* v. *Board of Election Commissioners*, 126 Cal. 411, 58 Pac. 932; *Coxe* v. *State*, 144 N. Y. 396, 39 N. E. 400;

*People* v. *Keller,* 157 N. Y. 97, 51 N. E. 431; *State* v. *Kelly,* 34 N. J. L. 75; *People* v. *Campbell,* 138 Cal. 13, 70 Pac. 918.)

J. A. Ellston, A. L. Shinn, and White, Miller & McLaughlin, for Respondent.

The respondent held until his successor was "elected and qualified," by virtue of his original appointment to fill the unexpired· term of the controller, whose unexpired term included such right. (*People* v. *Mizner,* 7 Cal. 519; *People* v. *Whitman,* 10 Cal. 38; *People* v. *Tilton,* 37 Cal. 614; *People* v. *Stratton,* 28 Cal. 390; *Commonwealth* v. *Hanley,* 9 Pa. 513.) The tenure of an office created by the constitution cannot be limited or modified by law. (*Treadwell* v. *Board of Suprs. of Yolo County,* 62 Cal. 565; *People ex rel. Westbrook* v. *Rosborough,* 14 Cal. 181; *People* v. *Perry,* 79 Cal. 105, 21 Pac. 423; *People* v. *Campbell,* 138 Cal. 11, 70 Pac. 918.) The extension of the term provided for is as much part of the entire term as is any part of the four years, and it excludes the possibility of a vacancy. (*People* v. *Whitman,* 10 Cal. 38; *People* v. *Edwards,* 93 Cal. 153, 28 Pac. 831; *People* v. *Tilton,* 37 Cal. 614; *People* v. *Tyrrell,* 87 Cal. 475, 25 Pac. 684.) When one is in possession of a constitutional office by a valid tenure, there is no power of appointment. (See California cases, *supra; Commonwealth* v. *Hanley,* 9 Pa. 513; *Gosman* v. *State,* 106 Ind. 203, 6 N. E. 349; *State* v. *Harrison,* 113 Ind. 434, 3 Am. St. Rep. 663, 16 N. E. 384; *Kimberlin* v. *State,* 130 Ind. 120, 30 Am. St. Rep. 208, 29 N. E. 773; *State* v. *Lusk,* 18 Mo. 333; *People* v. *Lord,* 9 Mich. 227; *Baker City* v. *Murphy,* 30 Or. 405, 42 Pac. 133; *State* v. *Compson,* 34 Or. 25, 54 Pac. 349; *State* v. *McCracken,* 51 Ohio St. 123, 36 N. E. 941; *People* v. *Hardy,* 8 Utah, 68, 29 Pac. 1118; *Carr* v. *Wilson,* 32 W. Va. 419, 9 S. E. 31; *State* v. *Tallman,* 24 Wash. 426, 64 Pac. 759; *Thomas* v. *Burrus,* 23 Miss. 550, 55 Am. Dec. 154; *Stilsing* v. *Davis,* 45 N. J. L. 390; *State* v. *Hadley,* 64 N. H. 473, 13 Atl. 643; *State* v. *Fagan,* 42 Conn. 32; *State* v. *McLure,* 84 N. C. 153; *State* v. *Irwin,* 5 Nev. 111; *People* v. *Hall,* 104 N. Y. 170, 10 N. E. 135; *People* v. *Osborne,* 7 Colo. 605, 4 Pac. 1074; *Walker* v. *Ferrill,* 58 Ga. 512; *Badger* v. *United States,* 93 U. S. 599; Throop on Public Officers, sec. 451; Mechem on Public Officers, ·secs. 126, 128, 130.) The term of· office of the controller

and other executive officers begins on the first Monday after the first day of January next after their election. (Const., art. XX, sec. 20; *Merced Bank* v. *Rosenthal,* 99 Cal. 39, 31 Pac. 849, 33 Pac. 732; *In re Stuart,* 53 Cal. 748; *Barton* v. *Kalloch,* 56 Cal. 101.) The construction of the constitution should be such as to harmonize its provisions, and to give force and meaning to every section of it. (*French* v. *Teschemaker,* 24 Cal. 518; *City of San Diego* v. *Granniss,* 77 Cal. 511, 19 Pac. 875; *Hyatt* v. *Allen,* 54 Cal. 353; *Gleason* v. *Spray,* 81 Cal. 217, 15 Am. St. Rep. 47, 22 Pac. 551; *Lloyd* v. *Silver Bow County,* 11 Mont. 408, 28 Pac. 453.) ''From and after'' does not have an absolute and invariable sense attached to it, and it will receive an exclusive or inclusive construction according to the intention with which it is used, to be derived from the entire subject matter of the document. It should be construed as inclusive to prevent conflict with section 26 of article XX of the constitution. (*Pugh* v. *Leeds,* Cowp. 714; *Sands* v. *Lyon,* 18 Conn. 18; *Oatman* v. *Walker,* 33 Me. 67.) The first Monday included the whole of that day, and the appointment by Governor Pardee of the respondent on that day was not premature, but constitutional and valid. (Pol. Code, sec. 3259; *Haines* v. *State,* 7 Tex. App. 30.) The practical, executive and contemporaneous construction of the constitution by the installation of all state officers except the governor and lieutenant governor on the first Monday after the first day of January is entitled to great weight in determining the meaning of the constitution. (*Heath* v. *Wallace,* 183 U. S. 573, 11 Sup. Ct. Rep. 380; *Schell* v. *Fauche,* 138 U. S. 562, 11 Sup. Ct. Rep. 376; *United States* v. *Alabama etc. R. Co.,* 142 U. S. 615, 12 Sup. Ct. Rep. 306.)

BURNETT, J.—The appeal is from the judgment following an order sustaining a demurrer to the complaint. The demurrer was sustained on the ground that the complaint fails to state facts sufficient to constitute a cause of action.

From the complaint the following facts appear: At the general state election held in November, 1906, J. N. Gillett was elected governor of California and E. P. Colgan was re-elected controller for the same term. At this time George C. Pardee was the duly elected, qualified and acting governor of the state. On the twentieth day of November, 1906, and after he was elected to succeed himself, but before he had

qualified for the succeeding term, and without having received notification of his election, E. P. Colgan died, and on November 23d thereafter Governor Pardee appointed respondent Nye to fill the unexpired term of the office of controller. Nye immediately qualified and took possession of the office on said date.

On Monday, the 7th of January, 1907, Governor Pardee issued a second commission to said Nye as controller ''for the term prescribed by law, vice self and E. P. Colgan, deceased.''

On said date Mr. Nye, acting under said commission, again qualified according to law.

Governor Gillett was installed the following Wednesday, January 9, 1907, and on April 29th following he issued a commission in due form to the relator, Mattison, to act as controller for the remainder of the term for which said Colgan, deceased, had been elected in November, 1906. Said Mattison duly qualified for said office and on said April 29, 1907, demanded of said Nye the possession of the office, and said Nye refused and ever since has refused to surrender the same.

By this action it was sought to have it adjudged that the said A. B. Nye is now, and since the said appointment and qualification of said Mattison has been, usurping and unlawfully holding the said office.

As stated by respondent, these two questions arise upon this appeal: 1. Did a vacancy in the office ever occur after the appointment of respondent on November 23, 1906? 2. If a vacancy occurred, did the commission issued to respondent on January 7th fill the vacancy?

It is his contention: 1. That a vacancy in the office occurred on the death of said Colgan, and as said Nye was admittedly appointed to fill said vacancy the controller thus appointed holds office until his successor shall be elected and qualified.

Therefore, it is insisted, that as no election of controller has taken place since said appointment no other vacancy has occurred.

2. If the term given respondent by the first commission expired so that a new appointment could thereafter be made. said first commission expired at such time that the second appointment of January 7, 1907, by Governor Pardee entitled respondent to a new term.

Appellant maintains: 1. That there were two distinct terms for which said Colgan had been. elected. 2. That the defendant Nye's appointment covered the first term of Colgan only. 3. That whatever force there might be in the words of Colgan's first term "until his successor is elected and qualified" could only apply to Colgan himself, had he lived until the regular expiration of his term, which would have been January 7, 1907. It could not apply to Nye as he was not elected under the constitution. 4. That the second commission to Nye, issued January 7, 1907, was void on two grounds: (a) That there was no existing vacancy; (b) There is no power to anticipate a vacancy, but, on the contrary, such a power is negatived. Governor Pardee had no right of appointment beyond the legal limits of his own term, which ended at midnight on January 7, 1907.

The trial court agreed with the views of respondent, which are epitomized in the foregoing statement of his position as to the scope and effect of each of said commissions.

1. The basis for respondent's contention that under the first commission he is still entitled to the office is the following provision of the state constitution: Section 2, article V: "The governor shall be elected by the qualified electors at the time and place of voting for members of the assembly, and shall hold his office four years from and after the first Monday after the first day of January subsequent to his election and until his successor is elected and qualified." Section 17, article V: "A secretary of state, a controller, a treasurer, an attorney general and a surveyor general shall be elected at the same time and places and in the same manner as the governor and lieutenant-governor and their terms of office shall be the same as that of the governor." Section 8, article V: "When any office shall from any cause become vacant and no mode is provided by the constitution and law for filling such vacancy the governor shall have power to fill such vacancy by granting a commission which shall expire at the end of the next session of the legislature, or at the next election by the people."

To appreciate the significance of respondent's attempted application of the foregoing provisions to the present situation, the following conceded facts must be regarded. The controversy involves a constitutional office; a vacancy therein

was created by the death of the said Colgan; respondent was regularly appointed to fill said vacancy; the constitution does not expressly limit said appointment to the term of four years within which the appointment was made, and since said appointment there has been no election of a successor to said Nye.

Then respondent argues that as to county offices, considered in some of the cases hereafter cited, the statutes have fixed a definite term and have simply provided that the officer must discharge the duties of his office, although his term has expired, until his successor is qualified; but said statutes can have no application here, as the constitution is supreme, and under its provisions upon the admitted facts Mr. Nye has succeeded to all the rights of Mr. Colgan as an incumbent of the office at the time of his death. The case is the same, therefore, it is maintained, as if Mr. Colgan had survived, held over in consequence of the failure of a successor to qualify and were now contesting the claim of relator to the office.

We proceed to notice some of the cases cited in support of this position.

In *People* v. *Whitman*, 10 Cal. 44, as stated by the court: "The defendant was duly elected controller at the election of 1855, and within the time required by law qualified and entered upon his office, which he has continued to hold ever since. At the election of 1857 the defendant and J. W. Mandeville were candidates for the office—the latter receiving the highest number of votes. . . . The election took place on the 3rd of September, and Mandeville never qualified or claimed the office of controller. On the 28th of April, 1858, the governor, regarding the office as vacant, appointed the relator (Melony), and the appointment was confirmed by the senate. The relator, having qualified, demanded possession of the office, which demand being refused, he brings this suit." The second proposition discussed by the court, viz., was there a vacancy in the office at the time of the appointment of the relator, is the only one of interest here. As to that it is said: "The constitution itself clearly defines the sense of the phrase 'vacancy of the office of governor' as used in the sixteenth section, by specifically enumerating in the succeeding section the instances which devolve the duties of the executive upon,

the lieutenant-governor. It will be seen that all the instances mentioned are such as can only occur after the term of the governor has commenced to run. It is only after the installation of the particular incumbent that any one of these contingencies can happen. . . . When the constitution clearly enumerates the events that shall constitute a vacancy in a particular office, we must suppose all other causes of vacancy excluded. . . . And by the provisions of section eighteen of the same article, the manner of electing a controller and the term of his office are the same as are prescribed for the governor and lieutenant-governor. If the controller elect fail to qualify from any cause, the controller holds over until his successor is elected and qualified. If the failure of the governor elect to qualify creates no vacancy in the office, but a mere extension of the term of the particular incumbent, neither does such a failure on the part of the controller elect create a vacancy in that office." The court, therefore, concluded that there was no vacancy in the office at the time of the appointment of the relator, and hence his case was dismissed.

The logic of that opinion, no doubt, affords much comfort and no little support to respondent in his first contention. The decision is criticised by appellant, attention is called to the dissenting views of Justice Field, it is claimed that the corresponding provisions of the present constitution in point are somewhat different from those in force at that time, and that the case has been virtually overruled by subsequent decisions. We pause now only to note that in the Whitman case the "hold-over" clause of the constitution was applied in favor of the party incumbent who had been elected by the people, whereas here it is invoked in favor of the appointee of the governor. In other words, the case would be more directly in point if another than Mr. Colgan had been elected controller in November, 1906, had failed to qualify, and Mr. Colgan had held over and were now contesting the right of an appointee to the office. Then would be applicable one of the persuasive reasons which induced the court in the Whitman case to decide in favor of the incumbent of the office, that is, "the executive officers are elected by the people, and under an elective system it is more proper that these officers should hold over than that the duties should devolve upon those in whose selection the people have had no choice." And im-

portance seems to have been attached to the circumstance that the court was called upon to decide between the choice of the people and the appointee of the governor. What weight it had in the determination of the cause we are, of course, unable to discover.

In *People* v. *Tilton*, 37 Cal. 614, the Whitman case is cited with approval, and it is said that "it was manifestly the intent of the constitution that the governor should appoint only when there is no party authorized by law to discharge the duties of the office. When there is a party expressly authorized by law to discharge those duties temporarily, till the power upon whom the duty of election or appointment is devolved can regularly act, there is no occasion for calling into exercise this extraordinary power vested in the governor to make a merely temporary appointment. There is no good reason for appointing a party to temporarily discharge the duties of an office when there is already a party expressly authorized by the constitution or laws to temporarily discharge those duties." The decision was in favor of Tilton, a harbor commissioner, who had been elected by the legislature for the term of four years "and until his successor is elected, commissioned and qualified as in this act provided."' The term of four years expired November 3, 1868. The legislature met on the first Monday of December, 1867, and adjourned without day, on the 30th of March, 1868, without electing a successor to Tilton. On the first day of December, 1868, and before another session of the legislature, the governor, assuming that there was a vacancy in said office, and that there was no other mode provided for filling it, appointed and commissioned the relator, Baird, who qualified, demanded possession of the office and the demand was refused. He then brought suit against Tilton to determine the right to the office, and, as we have seen, the court held that there was no vacancy and therefore the appointment was ineffectual.

In *People* v. *Edwards*, 93 Cal. 153, [28 Pac. 832], it is held that "where the term of an office is fixed and determinable, a provision requiring the officer to continue to discharge the duties of his office, although his term has expired, until his successor has qualified, adds an additional, contingent and defeasible term to the original fixed term and excludes the possibility of a vacancy, within the appointing power of the

governor, except in case of death, resignation, ineligibility or the like; and the office is held by the same title, or by as high and lawful tenure, after the prescribed term, until the title of a duly elected and qualified successor, at least, as before and during the term.''

In *People* v. *Campbell,* 138 Cal. 16, [70 Pac. 921], it is said: ''In the case of an office created by the legislature . . . it was competent for the legislature to provide for such additional contingent term, and where the office as well as its term is fixed, determinate by the constitution, the legislature has no power to extend or diminish the term or to add any contingent term thereto.''

Invoking these and other decisions, it is therefore maintained by respondent that sections 996 and 1001 of the Political Code are void, so far as they attempt to affect the tenure of the person who has been legally inducted into the office of controller or to provide for a vacancy therein, and it is further insisted that no authority can be found for any difference in this respect between an elected and an appointed official. But the fallacy of the position, as we view it, lies in the assumption that the constitution attempts to prescribe what shall constitute a vacancy in the office of controller, and again, while it is true that no distinction is expressly made between the elected and the appointed ''hold-over,'' the sweeping declarations we have already quoted were made in behalf of those who had been regularly elected.

The constitution refers expressly to a vacancy only in the offices of governor and lieutenant-governor. This is found in section 16 of article V, which is as follows: ''In case of the impeachment of the governor, or his removal from office, death, inability to discharge the powers and duties of his office, resignation or absence from the state, the powers and duties of the office shall devolve upon the lieutenant-governor for the residue of the term, or until the disability shall cease, and should the lieutenant-governor be impeached, displaced, die or become incapable of performing the duties of his office or be absent from the state, the president *pro tempore* of the senate shall act as governor until the vacancy in the office of the governor shall be filled at the next general election when members of the legislature shall be chosen, or until such disability of the lieutenant-governor shall cease.'' There is no

provision of the constitution that makes this section in reference to vacancy applicable to the controller. The term of office of the governor is indeed the same as that of the controller, but the term of office and a vacancy in that term are manifestly distinct and separate entities. Nor is there any express provision in the constitution applicable to the case at bar providing for the appointment of a controller in case of a vacancy. It is true that the constitution provides in section 8, article V, as we have seen, for the appointment to fill a vacancy when no mode is provided ''by the constitution and law.'' But this is inoperative here for the reason that a mode has been provided by law for filling a vacancy. When the constitution speaks of a mode provided by ''the constitution and law'' it obviously means the constitution or law. Of course, the law must be in harmony with the constitution, in other words, not opposed to any of its provisions. But we can see nothing that precludes the legislature from specifying what shall constitute a vacancy in any of the offices for which no provision is made in the constitution and providing how it shall be filled. It is true that the provisions of the constitution are ''mandatory and prohibitory'' (article I, section 22), but it is a familiar principle that the organic law provides simply a limitation upon the power of the legislature, which, otherwise, is supreme. There is no mandate nor prohibition, as we view it, in the constitution, that bars the right and authority of the legislature to provide for the contingencies we have suggested. The people, therefore, through the law-making department of the government, have the right to exercise this privilege which they have not surrendered. ''The declaration in article IV, section 1, of the constitution: 'The legislative power of this state shall be vested in a senate and assembly, which shall be designated the legislature of the state of California,' comprehends the exercise of all the sovereign authority of the state in matters which are properly the subject of legislation; and it is incumbent upon anyone who will challenge an act of the legislature as being invalid to show, either that such act is without the province of legislation, or that the particular subject-matter of that act has been by the constitution, either by express provision or by necessary implication, withdrawn by the people from the consideration of the legislature. The pre-

sumption which attends every act of the legislature is, that
it is within its power; and he who would exempt it from
the power must point out the particular provision of the
constitution by which the exception is made, or demonstrate
that it is palpably excluded from any consideration whatever
by that body." (*In re Madera Irr. Dist.*, 92 Cal. 307, [27
Am. St. Rep. 106, 28 Pac. 273].) The legislation to which
we have referred is obviously within the province of the
legislature and it is not obnoxious to any provision of the
constitution. We therefore look to it for guidance in seek-
ing to ascertain the contingencies that shall cause a vacancy
in the office of controller, the method for filling said vacancy
and the tenure by which the office shall be subsequently held.
Section 1001 of the Political Code provides how a vacancy
shall be filled as follows: "A vacancy in the office of either
the secretary of state, controller, treasurer, attorney-general,
surveyor-general, or clerk of the Supreme Court, must be filled
by a person appointed by the governor, who shall hold his
office for the balance of the unexpired term."

And the various circumstances by virtue of which a vacancy
is created, thereby calling for the exercise of this appointing
power of the governor are found enumerated in section 996
of the Political Code which, as far as applicable here, is as
follows: "An office becomes vacant on the happening of either
of the following events before the expiration of the term:
1. The death of the incumbent. . . . 9. His refusal, or neglect
to file his official oath or bond within the time prescribed."
It is elsewhere provided that the oath and bond must be filed
within ten days after the officer has notice of his election or
appointment, or before the expiration of fifteen days from the
commencement of his term of office, when no such notice has
been given. (Pol. Code, secs. 907, 947.)

By the death of Mr. Colgan, then, the duty was imposed
upon the governor to appoint a controller for "the balance
of the unexpired term." This was done, the commission so
providing. What was the "balance of the unexpired term"?
It seems almost too clear for argument that the balance of
the unexpired term would end the day before the beginning
of the term for which he was elected in November, 1906.

Two distinct terms are involved in this controversy. Mr.
Colgan was serving one term as controller when in November,

1906, he was elected for another term. If the first term did not come to an end there could be no beginning of the second term. It is impossible to conceive of the beginning of one without the ending of the other. But the term for which he was elected in November, 1906, according to the provisions of the constitution, began either January 7 or 8, 1907, according to the proper construction of the phrase in the constitution "from and after the first Monday after the first day of January." Therefore, if effect is to be given to the law quoted above, Mr. Nye's right to hold the office under the first commission expired either January 6 or January 7, 1907. It is true that in the interests of the public service, to prevent an "interregnum," it was his privilege and duty to discharge the functions of the office until it could be regularly filled by appointment or election, but he no longer had any right or title to the office except that which comes by virtue of his possession of said office under section 879 of the Political Code, providing that "Every officer must continue to discharge the duties of his office, although his term has expired, until his successor has qualified." But he did not thereby acquire any right to a new, fixed and definite term. He became a temporary incumbent, *locum tenens,* by virtue of public necessity, it has been said, until the place could be regularly filled. This seems to be the reasonable view and in harmony with the later decisions of the supreme court. In *Adams* v. *Doyle,* 139 Cal. 681, [73 Pac. 582], it is said: "The law divides the right to the office into certain terms, each of four years' duration. When a person who has been elected to hold the office for one of these terms fails to qualify, he, of course, cannot hold the term. He has forfeited his title. There is no other person legally entitled to it, and hence there is a vacancy in that term as soon as it begins. It is that sort of a vacancy to which the statute refers, and not to the actual absence of any person in the office to discharge the duties thereof. The incumbent, in the sense of the statute, is the person declared elected to hold the term, who holds title to it, subject to forfeiture by failing to qualify, although it is not yet begun. The fact that the prior incumbent, in order that the public business may be done, is allowed and directed to continue to discharge the duties in the meantime and until some person is lawfully invested with the title to the term,

9 Cal. App.—11

does not affect the question of there being a vacancy in the sense intended." (See, also, *People* v. *Ward,* 107 Cal. 236, [40 Pac. 538].)

From the foregoing considerations it clearly follows that at the beginning of the term for which Mr. Colgan was elected in November, 1906, there was in legal contemplation a vacancy in the office of controller.

It is suggested by appellant—but we cannot think very seriously—that there was no vacancy until fifteen days after the beginning of the term, because Mr. Colgan could not be considered as having forfeited the office until the expiration of fifteen days after the beginning of the term, within which time he had the privilege of qualifying. But it is manifest that if he is to be regarded as an incumbent in the application of said subdivision 9, the same principle must apply in the application of subdivision 1 of said section 996 of the Political Code. But the position is directly opposed to the Doyle case, *supra,* and other decisions, and bears upon its face its own condemnation.

In *People* v. *Taylor,* 57 Cal. 622, it is said: "This provision of the code (Pol. Code, sec. 996) regards the person duly elected to an office as the *incumbent* of that office from the time of the *commencement* of the term for which he was elected until the expiration thereof whether he qualifies or not."

In the Ward case, *supra,* it is said: "The death of the incumbent creates a vacancy as a matter of course, and without any expression from the legislature upon the question." And again: "It (the vacancy) arose when upon noon of January 7, 1895, Darby by death was not able to take his office." The proposition is rather startling that when the actual incumbent's term has expired and the one regularly elected for the ensuing term has died there is no vacancy in the office, for this view would imply that the statute contemplates the possibility of one qualifying for the office after his death.

There was undoubtedly, then, a vacancy in the office at the beginning of Mr. Colgan's second term, and there can be no doubt, since the acting governor has the power of appointment—indeed, it is not contested—that if his second term had begun before the second appointment of Mr. Nye, the latter

is now entitled to the office. That brings us to the most serious question in the case, which is:

2. When did Mr. Colgan's second term begin?

As we have already seen, the constitution provides that the *term* of office of the controller is the same as that of the governor, and it is provided that the latter shall hold his office four years *"from* and *after* the first Monday after the first day of January subsequent to his election."  But section 20 of article 20 provides that "Elections of the officers provided for by this constitution . . . shall be held in the even-numbered years next before the expiration of their respective terms. The terms of such officers shall commence *on* the first Monday after the first day of January next following their election."  The general rule is, no doubt, that a term "from and after Monday" begins on Tuesday, as the first day is excluded. But the phrase does not have an absolute and invariable sense, and it will receive an inclusive or exclusive construction according to the intention with which it is used. This intention, of course, we are to ascertain by an examination of the whole instrument in which the expression is found, seeking to harmonize and give effect to all its provisions. (*Saands* v. *Lyons,* 18 Conn. 18; *Oatman* v. *Walker,* 33 Me. 67.)  " 'From and after' have no certain or legal meaning that can be accepted as a guide under all circumstances, but it is generally accepted as a rule that they exclude the day from which the reckoning is to be made, and in order to avoid the application of it as a rule of construction there must be something in the act, or the result of a literal application of the words to the subject treated by it, to indicate a contrary intent."  (*O'Connor* v. *City of Fond du Lac,* 109 Wis. 253, [85 N. W. 327] ; *Parkinson* v. *Brandenburgh,* 35 Minn. 294, [59 Am. Rep. 326, 28 N. W. 919] ; *Leavenworth Coal Co.* v. *Barber,* 47 Kan. 29, [27 Pac. 114].)

Another rule of construction undoubtedly is as suggested by appellant that "where there is a conflict between a general and special provision in a constitution, the special provision must prevail in respect to the subject matter of it."  (*Warren* v. *Shuman,* 5 Tex. 442; *Martin* v. *Election Commissioners,* 126 Cal. 411, [58 Pac. 932].)

But, after all, the foregoing are only rules or guides to aid in the determination of the intention of the constitution

makers. The whole instrument must be regarded. We have no right arbitrarily to reject any provision. We should seek to harmonize its various sections and, if possible, give effect to all. (*French* v. *Teschemacher*, 24 Cal. 539; *San Diego* v. *Granniss*, 77 Cal. 511, [19 Pac. 875]; *Gleason* v. *Spray*, 81 Cal. 217, [15 Am. St. Rep. 47, 22 Pac. 551].)

Appellant's argument, as seen, proceeds upon the assumption that "from and after" necessarily excludes the first day, and therefore there is a conflict between the special and general provisions. The more reasonable view, in our opinion, is that the phrase was used in the inclusive sense, as equivalent to "on and after," and hence there is no special provision, at least, as applied to the controller and, therefore, no conflict as to when his term of office begins. The construction of appellant necessarily leads to the rejection of said later section 20 of article XX as an interloper without any function to perform. The conclusion we have reached gives effect to the whole instrument, and seems to be entirely in harmony with the intention of those who framed it.

Objection is made to this view for the reason that the legislature meets at noon on the first Monday to canvass the returns of the election for governor, and he is not installed, of course, until after that event, and it is claimed that his term could not begin prior to noon of said day. But it has been held in the decisions already cited that the term may, and sometimes does, begin before the qualification of the one elected or his actual incumbency of the office, and it would seem competent for the constitution to provide that the term of the governor should begin at a date prior to even the formal canvass of the returns, but after his actual election. Even according to the contention of appellant, the term of the present governor began one day before he qualified and took possession of the office. But aside from the foregoing, if, in view of the provision in reference to the canvass of the returns, the expression "from and after" must be held to convey its ordinary signification as applied to the beginning of the term of the governor, there is no such reason for so construing it in reference to the office of controller.

The supreme court has determined—although in a sense *obiter*—that the term begins on and not after Monday.

In *Re Stuart*, 53 Cal. 748, it is said: "Who are the officers provided for in the new constitution and whose terms of office are by the express commands of the constitution itself, to commence absolutely *on the first Monday after the first day of January next* following their election? We think that these are not municipal, county or township officers chosen in 1879, but state officers, such as governor and the other officers who constitute the executive department of the state government."

In *Barton* v. *Kalloch*, 56 Cal. 101, it is declared that the terms of these executive state officers "are fixed at four years, and until their successors are elected and qualified, and commence *on the first Monday after* the first day of January."

In *Merced Bank* v. *Rosenthal*, 99 Cal. 44, [31 Pac. 850], it is said: "It is contended that the whole term must be after Monday, that the use of either word 'from' or 'after' would exclude Monday and by using both words an intention is manifested to make this clear. . . . To sustain this position numerous authorities are cited, and if the question depended upon this language alone, I think the position of respondent would be impregnable; but it is not the only provision in the constitution affecting the question." The said section 20 of article XX is then quoted, and the court proceeds: "The only way to reconcile them is to suppose, as no doubt the fact was, that in fixing the length of the term the attention of the convention was not distinctly called to the exact date of the commencement, but the last section was intended to perform this office, and to provide that all officers of the state should take office on the same day. . . . On the whole, even if it must be concluded that section 6, Article VI, and section 20, Article XX are repugnant, the latter must control."

It is also true that for nearly thirty years—since the adoption of the constitution—all these executive officers except the governor and lieutenant-governor have been installed in office on the first Monday after the first day of January. While this circumstance is not controlling, it is, as held by the authorities, an executive and contemporaneous construction of the constitution entitled to great weight in the effort to ascertain the meaning of the instrument. (*Schell* v. *Fouche*, 138 U. S. 562, [11 Sup. Ct. Rep. 376]; *Heath* v. *Wallace*, 138 U. S. 582,

[11 Sup. Ct. Rep. 380] ; *United States* v. *Alabama R. R. Co.,* 142 U. S. 615, [12 Sup. Ct. Rep. 306].),

The judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 30, 1908.