State of Iowa, ex rel D. M. Freeman, Appellee, v. D. C. Carvey, Appellant.

PLEADING: Motions—When Not Allowable—Motion to Strike Motion. A motion to strike another motion is unknown to our practice.

PRINCIPLE APPLIED: Plaintiff, claiming that the petition and answer thereto entitled him to judgment, moved for judgment on the pleading. Defendant moved to strike the motion for judgment. *Held*, the motion to strike was properly overruled.

PLEADING: Motions—Motion for Judgment on Pleadings—When Allowable. A motion for judgment on the pleadings is proper whenever, in the opinion of the mover, the answer raises no issue of fact to be tried, and the allegations of the petition and answer, taken as true, entitle him to the relief prayed. And this is true even though a demurrer might reach the same result.

PLEADING: Motions—Judgment on Motion—Effect of Motion. A motion by plaintiff for judgment on the pleading necessarily admits the truth of affirmative matters pleaded in the answer.

OFFICERS: Vacancies and Holdings Over—Death of Re-elected Incumbent—Right of Appointee. The death of the re-elected incumbent of a public office before entering upon the new term creates a vacancy in the term which he was serving *at the time of his death*, but not in the new term *for which he had been elected*. (Sec. 1266, Code, 1897.) It follows that the duly appointed and qualified appointee to fill such vacancy possesses two rights: (1) To serve for the balance of such existing term, and (2) to hold over until the next general election, for the new term for which deceased was elected, provided he qualifies anew, within 10 days after such new term commences. (Secs. 1265, 1275, Code, 1897; Secs. 1060, 1177, Code Supp., 1913; Constitution, Art. 11, Sec. 6.)

OFFICERS: Right to Office—Quo Warranto—Burden of Proof. Relator in *quo warranto*, seeking to establish his right to a public office as a rival claimant thereto, must recover, if at all, on the strength or validity of his own title to the office, and not upon the weakness or defective character of the incumbent's title.

CONSTITUTIONAL LAW: Construction—Tenure of Office—Statutory Vacancy and Qualification. The constitutional provision that "all persons appointed to fill vacancies in office shall hold *until*

*the next general election''* (Art. 11, Sec. 6) is not inconsistent with the authority of the legislature (a) to define a "vacancy" or (b) to prescribe and regulate the manner of qualifying for office. (Secs. 1266, 1275, Code, 1897.)

*Appeal from Buchanan District Court.*—H. B. BOIES, Judge.

FRIDAY, NOVEMBER 26, 1915.

REHEARING DENIED THURSDAY, April 6, 1916.

THE opinion sufficiently states the case.—*Reversed.*

*Hasner & Hasner,* for appellant.

*R. J. O'Brien* and *Edwards, Longley, Ransier & Smith,* for appellee.

WEAVER, J.—Jesse Lyon was a member of the board of supervisors of Buchanan County for the term ending January 2, 1915; and at the general election held in November, 1914, he was re-elected to succeed himself, but died on or about December 1, 1914. On December 16, 1914, the county auditor, county recorder and clerk of the district court, under the statute authorizing such action (Section 1272, Code Sup., 1913), met and appointed the relator herein, D. M. Freeman, to fill the vacancy created by the death of Lyon. Relator was a citizen of the county and eligible to the office. On the same day, relator executed and filed his official bond with the usual oath of office, and acted as a member of the board of supervisors until and including January 1, 1915. On January 2, 1915, the county auditor, recorder and clerk again met and appointed respondent herein, D. C. Carvey, to fill the vacancy caused by Lyon's death, in the office of supervisor for the term beginning January 2, 1915. Two days later, respondent, who was also a citizen of the county and eligible to the office, qualified under the appointment by filing his official bond and oath of office, and entered upon the duties of the position. On January 26, 1915, the relator served a

written demand upon the county attorney that he bring an action in *quo warranto* to oust the respondent from the office of supervisor. The county attorney refused to proceed as requested, and thereupon, on January 28, 1915, relator having prepared the petition in this case, presented it to Hon. C. W. Mullan, judge of the district court, who endorsed thereon permission to the relator to prosecute such action. On February 2, 1915, the action was begun by filing the petition in the clerk's office.

The petition sets out the facts substantially as we have stated them. Respondent, appearing, filed an answer, in which he admits that the county attorney had refused to bring the action; admits the death of Lyon while in office as supervisor for the term ending January 2, 1915, thereby creating a vacancy in the office for the remainder of that term; admits that the relator was appointed to fill said vacancy, was eligible thereto and duly qualified therefor; admits that relator took possession of the office and discharged the duties thereof until January 2, 1915; admits that before his death, the said Lyon above mentioned had been elected supervisor for the term beginning January 2, 1915, and that on said day, there being a vacancy in the office for said term, the appointing board for the county appointed the respondent to fill the same, and that he thereupon qualified for the office as provided by law, and thereby became entitled to hold such office until the next election at which his successor could be chosen. He further alleges that the relator never qualified, as required by law, to hold the office, except under the appointment of December 16, 1914, and that the bond and oath then filed by him constitute the only qualification he has made or attempted at any time. He denies also all matters alleged in the petition and not in the answer admitted.

These pleadings having been filed, the relator filed a motion for judgment thereon in his favor, stating as grounds therefor that the petition and answer show clearly and conclusively that, as the person named in the appointment of Decem-

ber 16, 1914, the relator is entitled to hold the office until the vacancy is filled at a regular election, and that the appointment of the respondent is therefore void. Respondent thereupon moved to strike the foregoing motion from the files, because the only proper way to raise such objection to a pleading is by demurrer. The court overruled the motion to strike and sustained the motion for judgment in favor of the relator. The respondent appeals.

I. We are first met with a question of pleading and practice. It is appellant's position that his motion to strike the appellee's motion for judgment should have been sustained.

1. PLEADING: motions: when not allowable: motion to strike motion.

A motion to strike another motion is not provided for in our practice act and is not to be approved. If there be any reason why a motion should not be considered or should be denied, it constitutes sufficient reason why it should be overruled. A motion to strike in such case only encumbers the record.

The objection that the motion for judgment presented only such questions as could have been settled by demurrer is not well taken. Possibly a demurrer to the answer would

2. PLEADING: motions: motion for judgment on pleadings: when allowable.

have reached the same end, but we think, under the practice prevailing in the trial courts of the state, if it was the relator's judgment that the allegations of the answer raised no issue of fact to be tried, and that the allegations of both petition and answer being all taken as true entitled him to the relief prayed, it was competent for him to move for judgment on the pleadings, and there was no prejudicial error in entertaining the motion. Whether the ruling sustaining the motion and entering judgment for the relator can be sustained is another question, which we shall consider in the next paragraph of this opinion. It is no sufficient objection to this holding that, if the relator had demurred, opportunity would have been given respondent to amend if so advised. Motions attacking a pleading are frequently given effect as

demurrers, and an order sustaining such a motion has never been held to deprive the pleader of the chance to amend if he indicate such a desire. We must assume that, if appellant in this case had wished to amend, he would have said so, and that leave would have been given. No such request was made. But it is said that the answer contained a general denial, and such being the case, neither demurrer nor motion for judgment would lie. There was no general denial. The answer denies nothing in the petition except those allegations ''not expressly herein admitted,'' and then proceeds to admit practically all the matters alleged by the relator. The very general character of the admissions and the qualified character of the denial are such that it may fairly be said that the latter raises no material issue upon any pertinent fact. Of

3. PLEADING: motions: judgment on motion: effect of motion.

the new or affirmative matters pleaded in the answer, it is to be said that the motion for judgment necessarily admits the truth thereof. The petition and answer taken together disclose no material disputes of fact. The real question presented is one of law, and there was no error in so treating it.

II. The real question before us may be briefly stated as follows: Under the conceded facts, was the relator's appointment to the office of supervisor an appointment to a

4. OFFICERS: vacancies and holdings over: death of reelected incumbent: right of appointee.

vacancy ending with that term, January 2, 1915, or did he, by such appointment, acquire the right to hold the office until the vacancy could be filled at the next general election? The cases treating questions having more

or less likeness to the one we have here stated are very numerous and are to be found in the decisions of the courts of many jurisdictions. Upon no one phase of these contests does there seem to be an entire consensus of opinion, and upon many it is impossible to reconcile the precedents. To some extent, the apparent disharmony has its rise in the varying provisions of state Constitutions and statutes; and in

order to keep our discussion within bounds, it is well that we recall at the outset what our written law has to say in this regard.

Section 6 of Article 11 of the Constitution of Iowa reads as follows:

"In all cases of elections to fill vacancies in office occurring before the expiration of a full term, the person so elected shall hold for the residue of the unexpired term; and all persons appointed to fill vacancies in office shall hold until the next general election, and until their successors are elected and qualified."

In Code Section 1266, the legislature defines "vacancy" and when it shall be deemed to exist as follows:

"Every civil office shall be vacant upon the happening of either of the following events:

"1. A failure to elect at the proper election * * *;

"2. Failure of the incumbent or hold-over officer to qualify within the time prescribed by law;

"3. The incumbent ceasing to be a resident * * *; .

"4. The resignation or death of the incumbent;

"5. The removal of the incumbent from, or forfeiture of, his office * * *;

"6. The conviction of incumbent of an infamous crime * * *;

"7. The acceptance * * * of a commission to any military office * * *."

It is further enacted that:

"Except when otherwise provided, every officer elected or appointed for a fixed term shall hold office until his successor is elected and qualified, unless he resigns, or is removed or suspended, as provided by law." Code Section 1265.

Also:

"The term of office of all officers chosen at a general election for a full term shall commence on the second secular day of January next thereafter, except when otherwise pro-

vided by the Constitution or by statute; that of an officer chosen to fill a vacancy shall commence as soon as he has qualified therefor." Code Supp., 1913, Section 1060.

A county supervisor is required to give bond (Code Supp., 1913, Section 1182-a); and in common with other elected officers, he is to file this bond with his oath of office before noon of the second secular day of January after the election (Code Supp., 1913, Section 1177). When, however, "it is ascertained that the incumbent is entitled to hold over by reason of the nonelection of a successor, or for the neglect or refusal of the successor to qualify, he shall *qualify anew* within the time provided by Section 1275 of the Code." Code Supp., 1913, Section 1195.

Turning to the cited Section 1275 of the Code, we find it reads as follows:

"Persons elected or appointed to fill vacancies and officers entitled to hold over to fill vacancies occurring through a failure to elect, appoint or qualify, as provided in this chapter, shall qualify within ten days from such election, appointment, or failure to elect, appoint or qualify, in the same manner as those originally elected or appointed to such offices."

The foregoing appears to constitute all the written law of the state bearing upon the subject matter of this litigation; and at first blush, it would seem too comprehensive, clear and explicit to call for construction, and to provide for every variety of circumstance which could reasonably be anticipated. It does not, however, in express words provide for the contingency of the death of a re-elected officer after his re-election and before he qualifies for the new term. Notwithstanding this omission, we are persuaded that provision for such a case is to be found in the evident spirit and intent of the legislative language; and this being ascertained, we shall have little occasion to enter upon a review of the many precedents to which our attention has been called. That the death of Lyon created a vacancy in the office of supervisor is declared by statute. Indeed, in the absence of any statute, and in the

very nature of things, it must be said that, whenever an office exists and there is no incumbent to perform its functions, there is a vacancy. At the date of his death, deceased was in possession of the office and vested with the right to retain it to the end of his current term. He had yet acquired no right to the succeeding term. He had been elected, but he had not qualified. The time for him to elect whether he would qualify or would decline to assume the responsibility for another term had not yet arrived. The vacancy created by his death was a vacancy of the office for the remainder of his current term. While there is considerable confusion in the cases, the great weight of authority is that where a re-elected incumbent dies before entering upon the new term, his death creates a vacancy in the term which he was then serving, but not in the term upon which he had not yet entered. *State ex rel. Sheets v. Speidel,* 62 O. St. 156 (56 N. E. 871) ; *State ex rel. Hellier v. Vincent,* 20 S. D. 90; *People v. Nye* (Cal.), 98 Pac. 241.

So, too, and quite in point in principle, is the holding by much the greater number of courts that the death of a person elected to office before the time arrives for him to qualify therefor or to enter upon his official duties does not create a vacancy; and this is especially true where, by Constitution or statute, it is provided that the incumbent of such an office shall hold the same for the term provided by law, and until his successor is elected and qualified. See the following cases cited in note to *Commonwealth v. Sheatz* (Pa.), 50 L. R. A. (N. S.) 376; *Kimberlin v. State,* 130 Ind. 120 (29 N. E. 773) ; *People v. McIver,* 68 N. C. 467; *Lawrence v. Hanley,* 84 Mich. 399 (47 N. W. 753) ; *State ex rel. Hoyt v. Metcalfe,* 80 Ohio St. 244 (88 N. E. 738) ; *Commonwealth v. Hanley,* 9 Pa. 513; *State v. Benedict,* 15 Minn. 198; *People v. Nye* (Cal.), 98 Pac. 241.

As we have seen, this state has provided, both by Constitution and by statute, that one who is elected to office for a stated term shall hold for the period of such term and until his successor has been elected and qualified. The right to hold

over is not limited to elected incumbents, but extends without doubt to incumbents serving by appointment.

It follows from the foregoing that the appointment of the relator to the office of supervisor on December 16, 1914, was an appointment to fill the only vacancy then existing—the vacancy in the office for the remainder of the current term, and no more. Having accepted the appointment and qualified thereunder, relator's right to continue in office after noon of the second secular day of January, 1915, was not referable to any authority in the appointing board to fill a vacancy before it occurred, but to the hold-over provisions of the Constitution and of the statute by which, upon failure of a successor to appear and qualify at the proper time, the incumbent is entitled to continue in the position.

If this were all the record, the case would be free from difficulty and could be readily affirmed. But we have more. In this state, as we have seen, it is expressly provided by statute that an officer entitled to hold over to fill a vacancy and proposing to exercise such right "must qualify anew" within ten days; and, upon failure to do so, the office becomes vacant. It stands admitted that the relator did furnish the proper bond and execute the proper oath of office on December 16, 1914, to qualify him for the acceptance of the appointment made on that date, but he has never attempted to qualify as a holdover. Unless, therefore, we are to hold that the original qualification under his appointment to fill the vacancy created by the death of Lyon was sufficient, and that the statute which required a holdover to "qualify anew" has no application to such a case, it inevitably follows that when the relator instituted this action, he had vacated the office. But we see no escape from the conclusion that, as a holdover, it was his duty to requalify. No exceptions to the statutory requirement are expressed, and it is not our province to make any. Had Lyon lived, his qualification for the term he was then holding would not have been sufficient to satisfy the requirement upon him to requalify for the new term, nor

would it have satisfied such requirement had he not been
re-elected, but was claiming to hold over because the person
elected to succeed him had died or refused to qualify. Now
the effect of relator's appointment was simply to induct him
.into office with the same rights attaching to his incumbency
as had attached to the incumbency of Lyon. His right to
.hold over was neither more nor. less than Lyon would have
had, and that right in each instance was subject to be lost by
failure to qualify anew, as the statute directs. Having failed
to qualify, and the statute having declared that such failure
shall create a vacancy in the office, is relator in position to
maintain this action?

While the phrase *quo warranto* persists in our legal litera-
ture and in the language of lawyers and courts, the ancient
proceeding thus named has long been obsolete in most juris-
dictions. It has not been carried into our
statutes or our practice; but, as in most states,
we have a statutory proceeding for the testing
of official and corporate rights, Code Section

5. OFFICERS: right
to office: *quo
warranto*:
burden of proof.

4313, *et seq.* It authorizes a civil action brought by ordinary
proceedings in the name of the state; and among the stated
purposes of such action, is the ousting of any person unlaw-
fully holding or exercising a public office. It may be brought
as a matter of right or duty by the public prosecutor, and in
some cases, where the prosecutor refuses to act, it may be
brought by a private person who has some interest in the
matter and obtains leave of the court or judge to proceed
therein. As interpreted and applied in this state, it is proper
to make use of this proceeding as an alternative or cumulative
method of contesting the validity of an election or appoint-
ment to a public office; and in such cases, it is ordinarily
brought upon the relation of one who claims a right to such
office against an incumbent who excludes him therefrom.
*Haverstock v. Aylesworth,* 113 Iowa 378. Though brought in
the name of the state, it is, when thus used on the relation of

a claimant to a contested office, essentially a personal action
for the determination of the conflicting claims of the relator
and respondent, and is subject to the general rules obtaining
in the trial of disputed rights in other actions at law. *Des-
mond v. McCarthy,* 17 Iowa 525; *State v. Minton,* 49 Iowa 591;
*State v. Stein* (Neb.), 14 N. W. 481; *Tarbox v. Sughrue,* 36
Kan. 225; *Res Publica v. Griffiths,* 2 Dallas (U. S.) 112.

When the action is brought by the public prosecutor in
the name of the state or upon his own relation in his official
capacity for the vindication or protection of public rights,
the burden is probably upon the responding incumbent of the
office in the first instance to show by what right he is exer-
cising its functions. At least, such was the ancient rule. But
where the proceeding is made use of to settle the dispute of
rival claimants to the same office, the burden is upon the
relator to show the better title in himself. Stated otherwise,
the relator must recover, if at all, on the strength or validity
of his own title, and not upon the weakness or defective char-
acter of the incumbent's title. *State v. Moores* (Neb.), 72
N. W. 1056. In the cited case, it is said:

"It is important to remember that this action was not
instituted by the attorney general, but was brought by private
persons asserting the right to the offices in question. Had the
attorney general been the relator, it would have devolved upon
the respondents to show that they were rightfully inducted
into office. * * * When the information is filed by a private
person, the same rule does not obtain. He is required to show
that his title to the office is better than that of the incumbent,
and must recover, if at all, upon the strength of his own title,
and not upon the weakness of the claim of his adversary."

To the same point is *Commonwealth v. Dillon,* 81½ Pa.
(F. P. Smith 32) 41.

In a proceeding of this character, the Minnesota court
says:

"The relators must show title in themselves before they

can properly inquire by what authority the respondents exercise their office." *State v. Oftedal,* 75 N. W. 692, 696.

So also it is said by the Michigan court:

"The statutory relation by a private claimant of office is purely private litigation and is substantially a civil proceeding, in which the plaintiff has the burden of the controversy. No private citizen has any right to compel an officer to show title until he has shown his own right in the first place to attack it. In such a controversy, it is manifest that a plea showing that relator has no rights is as appropriate as one setting up title in the respondent." *Vrooman v. Michie,* 36 N. W. 749.

So in Indiana:

"The relator must recover, if at all, on the strength of his own title to the office. He cannot prevail upon any infirmity or weakness of the title of the appellee." *Benham v. Bradt,* 84 N. E. 1084.

The same proposition is again affirmed by the same court in *State v. Wheatley* (Ind.), 66 N. E. 684. In the same case, it is held that a relator's petition which does not show that he has qualified, as required by law, for the office claimed by him, is fatally defective.

In *People v. Lacoste,* 37 N. Y. 192, 194, it is said:

"The relators, in order to succeed in this action, must establish by competent evidence, that, at the election, they, instead of the defendants, were duly elected. The burden is upon them."

See, also, *State v. Kupferle,* 44 Mo. 154; High on Extraordinary Remedies, Sec. 656. Indeed, for the purposes of this case, counsel for appellee expressly concede that:

"It is the proper tenure of office of the relator under his appointment which determines this controversy. If his tenure ceased with the ending of the unexpired term which Lyon was then (at the time of his death) serving, then the defendant Carvey was improperly ousted, and this case should be

reversed; but if, under that appointment, the relator was entitled to hold until the general election of 1916, the decision was right and should be affirmed.''

Recurring to the situation of the parties at the time this action was begun, we find the respondent in possession of the office and performing its duties. The relator instituted this action to oust the respondent in his favor, alleging as the basis of his right thereto his own appointment to fill the vacancy caused by the death of Lyon, who was at that time the lawful incumbent for the term to expire in the following January and was also the re-elected candidate, who would have been entitled to the position for the next term, had he lived and qualified therefor, as required by law. By virtue of that appointment and the qualification and the appointment made thereunder on the day of his appointment, and without qualifying anew as a holdover, he challenges the right of the present incumbent of the office. Such being his attitude, we think it clear, both upon principle and precedent, as well as upon statutory grounds, that he has failed to make a case entitling him to a judgment of ouster against the respondent. As we have already said, the only vacancy existing in the office at the time of his appointment was that created by the death of the incumbent. The deceased was then the incumbent of the office for the term ending the second secular day of January, 1915, and the vacancy so created could not be of longer duration. A vacancy in the office for the next term could only be brought to pass or exist when the hour for entrance thereon arrived, and no duly qualified person appeared to take possession or to assume its functions by virtue of an election or appointment thereto, or as an incumbent entitled to hold over upon failure of a successor to qualify. It is true that cases are found and cited to us to the effect that an appointment thus made continues with unimpaired force and effect over the entire period from its date until the next general election, even though the term which the deceased incumbent was serving at the time of his death should meanwhile expire; but so far as we have

been able to examine these precedents, not one of them involves, as does this case, the effect of a statute which defines a vacancy and points out specifically when it may be said to exist, or of a statute which requires a holdover to qualify anew, and declares that, upon failure to comply with this requirement, the office shall become vacant. Holding, as we do, that wherever, by Constitution or by statute, an incumbent is entitled to hold over beyond his stated term, if, at the end thereof, there is no qualified successor, the death of an incumbent can create no vacancy beyond the end of his current term, we are unable to follow the lead of the precedents upon which appellee relies. The result is therefore inevitable that, by his appointment to the vacancy, relator became the rightful incumbent of the office until the second secular day of January, and as such incumbent, he became entitled, under the Constitution and statute, to hold over until the next general election. But he could, by his own act or neglect, lose that right and suffer the office to become vacant by failing to qualify anew. The constitutional provision is not inconsistent with the authority of the legislature to define a vacancy or to prescribe and regulate the manner of qualifying for office. It was the relator's duty to qualify anew. The ten days in which this might have been done had expired before this action was brought. By this failure, the office became vacant. Code Section 1266. Upon his concession as to the facts, he failed to show good title to the office in himself. This being the record, then, upon his own theory of the vital legal proposition in the case, and upon what we believe the better and greater weight of the authorities, the judgment of ouster in his favor cannot be permitted to stand.

6. CONSTITU-
TIONAL LAW:
construction:
tenure of office:
statutory va-
cancy and
qualification.

We are cited to the case of *State v. Brown,* 144 Iowa 739, as holding that it is immaterial whether an appointee holding over qualifies anew. Such holding or such suggestion is not there found. The relator there had never been appointed to fill the vacancy. He had simply been designated by the court,

which had no power of appointment, to perform the duties of clerk until an appointment could be regularly made by the board of supervisors, and we held that he acquired no right of holdover, and it did not lie in his mouth to question the validity of the act of the board in filling the place by appointment.

This makes it unnecessary to enter upon discussion of the regularity or validity of the act of the appointing board in selecting the respondent to fill the office. For the reasons stated, the judgment below will be reversed, and cause remanded, with directions to the district court to enter judgment in harmony with the views here expressed.—*Reversed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.