[File No. 6359.]

**J. A. AUBOL** and Alice Audette, Respondents, v. MARTIN J. ENGESETH, as Assessor of the City of Minot, North Dakota, et al., Appellants.

(262 N. W. 338, 100 A.L.R. 853.)

Opinion filed September 2, 1935.

*John J. Coyle,* for respondents.

*Robt. W. Palda,* State's Attorney, and *C. E. Brace,* Assistant State's Attorney, and *W. J. Auslin,* Assistant Attorney General, for appellants.

BURKE, Ch. J.   This action was brought under chapter 11a of the 1925 Supplement to the Compiled Laws of 1913 for a declaratory judgment construing chapter 247 of the Session Laws of 1931 and a declaration of the rights, status or legal relations of the plaintiffs.   It is alleged, in the complaint, that  J. A. Aubol is a citizen of  the United States, a resident of Ward county and a male person of the age of sixty-four years; that the plaintiff, Alice Audette, is a female person of twenty-five years of age, a citizen of the United States and a resident of Ward county; that the defendants have, heretofore, and are now threatening again to assess, levy and collect from each of the plaintiffs herein a school poll tax in the sum of one dollar per year in violation of § 180 of the Constitution of the state of North Dakota, which reads as follows:   "The legislative assembly may provide for the levy, collection and disposition of an annual poll tax of not more than one dollar and fifty cents on every male inhabitant of this state over twenty-one and under fifty years of age, except paupers, idiots, insane persons and Indians not taxed."

In 1931 the Legislature enacted chapter 247 of the Session Laws of said year which provides:   "Section 1.   Per Capita School Tax.   The County Auditor shall each year levy a tax of one dollar ($1.00) on each person twenty-one (21) years of age or over who on the first of April in each year has resided in the state ninety (90) days or more, . . ."

On the stipulated facts the trial judge held the law unconstitutional and enjoined the defendants from assessing and collecting said tax and the state appeals.

The only question involved is, does § 180 of the Constitution, which provides that "the legislative assembly may provide for the levy, collection and disposition of an annual poll tax of not more than one dollar and fifty cents on every male inhabitant of this state over twenty-one and under fifty years of age," limit the power of the Legislature to the assessment of such persons and does it exclude all others?   It does not

expressly exclude all others and if others are excluded it must be by implication.

A similar question was before the Michigan court in the case of Walcott v. People, 17 Mich. 68. In that case the law in question required express companies, associations or individuals conducting the business specified to pay into the state treasury a specific state tax of one per cent on the gross amount of current business. The Michigan Constitution in question reads: "The state may continue to collect all specific taxes accruing to the treasury under existing laws. *The legislature may provide for the collection of specific taxes, from banking, railroad, plank-road and other corporations hereafter created."* This last provision, which we have emphasized, is very much like § 180 of our Constitution.

In the Michigan case it was contended that the Constitution intended to limit the action of the Legislature in the imposition of specific taxes to corporations created by the laws of the state and that a tax on business is prohibited by implication. That the enumeration in article 14, § 10 of certain corporations, as subject to the imposition of specific taxes, is a negative upon the right thus to tax any other organizations, and it was insisted that the Constitution inhibits the imposition of specific taxes on corporations created subsequent to the Constitution. The court said: "The proposition that the tax imposed by the act is prohibited by constitutional implication cannot be supported. . . . In the absence of any provision clearly evincing an intention to abandon the power in question, the purpose to relinquish it ought not to be presumed. It is not to be supposed that a matter of such vital consequence would have been left to turn on a vague conjecture or shadowy implication. Providence Bank v. Billings, 4 Pet. 561, 7 L. ed. 955." This decision was concurred in by Judge Cooley.

A case very much in point is the Tennessee case of Vertrees v. State Bd. of Elections, 141 Tenn. 645, 214 S. W. 737. The Tennessee Constitution provides: "All male citizens of this state over the age of twenty-one years, except such persons as may be exempt by law on account of age or other infirmity, shall be liable to a poll tax not less than fifty cents, nor more than one dollar per annum." The court said: "It is contended that this constitutional expression of the class and gender

on whom the poll tax shall be imposed is a restraint of the power of the Legislature to impose the tax on the opposite gender. That is to say, by implication the Constitution prohibits the Legislature from imposing a poll tax upon women.

"This argument ignores the well-settled principle that a constitutional limitation upon the power of taxation will never be inferred or implied. The right to tax is essential to the existence of government, and is peculiarly a matter for the Legislature, and the legislative power in this respect can only be restrained by a distinct and positive expression in the fundamental law.

" 'The power of taxation being essential to government, and being usually confided in the largest measure to legislative discretion, constitutional limitations upon its exercise will not be inferred or implied, but must be distinctly and positively expressed.' 37 Cyc. 727; 1 Cooley, Taxn. 3d ed. p. 177. . . .

"This rule was clearly recognized by this court in the case of Kuntz v. Davidson County, 6 Lea, 65. In this case the defendant was a subject of the King of Prussia, although he resided in Davidson county. It was insisted that the constitutional provision rendering male citizens liable for poll tax excluded males who were not citizens. Such an idea, however, was rejected by the court, and it was held that inasmuch as there was no constitutional restriction upon the power of the Legislature in this respect, it might levy a poll tax upon male inhabitants as well as upon male citizens." To the same effect is the case of Hill v. Roberts, 142 Tenn. 215, 217 S. W. 826.

In the case of State v. Cheyenne County, 127 Neb. 619, 256 N. W. 68, the Nebraska court said: "And the proper construction of these constitutional limitations necessarily requires the due application of the principle that limitations or restrictions upon the exercise of this essential power of sovereignty (the power to tax) can never be raised by implication, but the intention to impose them must be expressed in clear, unambiguous language. Lane County v. Oregon, 7 Wall. 71, 19 L. ed. 101; State, Trenton Water Power Co. Prosecutor, v. Parker, 32 N. J. L. 426; Hill v. Roberts, 142 Tenn. 215, 217 S. W. 826; Vertrees v. State Bd. of Elections, 141 Tenn. 645, 214 S. W. 737; Eyre v. Jacob, 14 Gratt. 422, 73 Am. Dec. 367."

In the case of Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102, — A.L.R. —, the Minnesota court had before it an act imposing income tax and franchise or privilege taxes measured by income for the benefit of school districts of the state. The court said: "Respondent contends that the exemptions are forbidden by the construction we have placed on our Constitution, and that the enumeration of compulsory exemptions excludes the power to make others. . . . It must be borne in mind that a grant of power to exempt was not being made by the Constitution, but a restriction upon the power to tax was being laid down by the enumeration of compulsory exemptions, except in the instance of personal property exemptions to the head of a family. There is a serious question whether the rule of 'expressio unius' applies with the same force to a Constitution as to a statute. State ex rel. Putman Holm, 172 Minn. 162, 166, 215 N. W. 200, 54 A.L.R. 333. We think it does not do so here. In Stanley v. Gates, 179 Ark. 886, 892, 19 S. W. (2d) 1000, 1002, speaking of this maxim of construction the court said:

" 'That the maxim "is not to be applied with the same rigor in construing a state Constitution as a statute; and that only those things expressed in such positive affirmative terms as plainly imply the negative of what is not mentioned will be considered as inhibiting the powers of the Legislature." The reason is that the Constitution of a state is not a grant of enumerated power, but its chief object is to impose limitations upon the several departments of government. If a contested enactment is not prohibited either by the letter or spirit of the Constitution, it is authorized.' ·

"We hold that the enumeration of exemptions in our Constitution does not forbid making others which do not offend the uniformity clause or the Federal Constitution. The power to fairly exempt is inherent in the power to tax."

To the same effect is the case of State v. State Bd. of Equalization, 56 Mont. 413, 185 P. 708, 186 P. 697. The Constitution of Montana defined the duty of state and county boards of equalization and then provided that *"the boards shall also perform such other duties as may be prescribed by law."* The Constitution was amended and the provision that *"the Boards shall also·perform such other duties as may be*

*prescribed by law"* was omitted from the amendment and it was claimed that this omission limited the powers of the Board to those defined in the Constitution. The court said: "It is argued by counsel for respondents that the authority conferred upon the State Board of Equalization to assess the property of railroads excludes all other powers of original assessment, because the provisions of the Constitution are mandatory and prohibitory (§ 29, art. 3); that the maxim, Expressio unius est exclusio alterius, applies; and that the omission from § 15, art. 12 of the Constitution, as amended in 1916 (see Laws 1917, chap. 174), which defines the duties of the state and county boards of equalization, of the provision which was a part of said section before it was amended, that the boards shall 'also perform such other duties as may be prescribed by law,' evinces a clear intention to restrict the duties of the State Board of Equalization to those specified in the section itself, with the exception only of the assessment of the property of railroads. Such an omission would have great force if we were considering its effect in connection with a statute amended by the Legislature.

"However, the Constitution is not a grant, but a limitation, of the powers of the Legislature. This fundamental distinction between the Constitution of a state and the Constitution of the United States has frequently been stated by this court. In the case of State ex rel. Sam Toi v. French, 17 Mont. 54, 41 P. 1078, 30 L.R.A. 415, it was said:

" 'A state Legislature is not acting under enumerated or granted powers, but rather under inherent powers, restricted only by the provisions of the sovereign Constitution.'

"And in the case of Missouri River Power Co. v. Steele, 32 Mont. 433, 80 P. 1093, this court said:

" 'In the matter of legislation, the people, through the Legislature, have plenary power, except in so far as inhibited by the Constitution, and the person who denies the authority in any given instance must be able to point out distinctly the particular provision of the Constitution which limits or prohibits the power exercised.'

"See also Hilger v. Moore, 56 Mont. 146, 182 P. 477, and Re Pomeroy, 51 Mont. 119, 151 P. 333.

"In determining, therefore, the effect of this omission from § 15, it is to be borne in mind that the inquiry is not whether the power for

a particular enactment is to be found in express terms in the Constitution, but whether there is anything in that instrument which forbids the legislation. Viewed in this light, we do not find, in the omission of the sentence above quoted, any inhibition of the exercise of the Legislature of the power under consideration."

In the case of State, Trenton Water Power Co. Prosecutors, v. Parker, 32 N. J. L. 426, the New Jersey court said: "The power of taxation is an essential attribute of sovereignty, reaching to all persons, and property belonging to the body politic. It resides in the government as part of itself, and need not be reserved where property of any description, or the right to use it in any manner, is granted to individuals or corporate bodies, and it will never be presumed to be relinquished unless the intention to do so is declared in clear and unambiguous terms. Providence Bank v. Billings, 4 Pet. 514, 7 L. ed. 939; Philadelphia & B. W. R. Co. v. Maryland, 10 How. 393, 13 L. ed. 468; State, New Jersey R. & Transp. Co. Prosecutors, v. Newark, 26 N. J. L. 519.

"This power is necessarily unlimited in its extent, unless restrained or qualified by constitutional provisions, or legislative enactment, assuming the form of an irrepealable contract, and for that reason within the protection of the constitution. No limitation or restriction upon the exercise of this essential attribute of government will be raised by implication. The intention to limit or abridge must be declared by positive legislative enactment, expressed in as clear and unambiguous terms as would be required to constitute a total renunciation of the power of taxation."

1 Cooley, Taxn. 4th ed. § 131, states the rule as follows: ". . . limitations or restrictions upon the exercise of this essential power of sovereignty can never be raised by implication, but the intention to impose them must be expressed in clear and unambiguous language. And with the exception of the limitations and restrictions . . . mentioned or referred to, it must be taken as generally true that the power to tax is limited in extent, in purpose, and in methods only by the will of the state as expressed in its laws. The provisions in state constitutions in relation to taxation are not grants of power but are limitations on the taxing power of the states."

In the case of Southern R. Co. v. St. Clair County, 124 Ala. 491, 27

So. 23, the Alabama court held that in the absence of express affirmative provisions, prohibition of legislative power is not implied from the mere silence of the constitution in regard to any subject; and in the case of Southern R. Co. v. St. Clair County, 124 Ala. 491, 27 So. 23, the Alabama court held that a constitutional provision authorizing one county to impose special taxes for school purposes does not prevent the legislature from passing an act permitting another county to levy a local tax for such purposes.

61 C. J. § 9, p. 80, states the rule as follows: "The power of taxation being essential to government, and being usually confined in the largest measure to the legislative discretion, constitutional limitations upon its exercise will not be inferred or implied, but must be distinctly and positively expressed, . . ." See also opinion of Judge Brewer in the case of Prouty v. Stover, 11 Kan. 235.

From this unbroken line of decisions it is clear that the power to tax is essentially a power of sovereignty; that all constitutional provisions relating thereto are not grants of power, but are limitations and the power to tax cannot be limited, restricted or prohibited, except by a positive declaration, expressed in clear, unambiguous language. It follows that the judgment must be, and is, reversed.

BURR and MORRIS, JJ., concur.

CHRISTIANSON, J. (dissenting). I am unable to agree with the conclusion reached by my associates in this case.

It is true the power to tax is essential to the very existence of government, it inheres in every sovereignty, and "the legislature of every free state will possess it under the general grant of legislative power whether particularly specified in the constitution among the powers to be exercised by it or not." 2 Cooley, Const. Lim. 8th ed. pp. 986, 987. Experience has demonstrated, however, that the proper conduct of constitutional government requires that the power of taxation be circumscribed and limited and directed by constitutional provision. The framers of the constitution of North Dakota and the people who adopted it, were not willing that the law-making body should exercise the general legislative power in the field of taxation without restraint. So they proceeded, by rather definite rules, to direct, limit, and circum-

scribe its power to deal with the subject of taxation. Article 11 of the state Constitution, consisting of eight sections (§§ 174–181) deals with the subject of revenue and taxation. The first six sections all regulate, restrict, limit or direct the legislative power as regards taxation. Then follow §§ 180 and 181 which provide:

"Section 180. The legislative assembly may provide for the levy, collection and disposition of an annual poll tax of not more than one dollar and fifty cents on every male inhabitant of this state over twenty-one and under fifty years of age, except paupers, idiots, insane persons and Indians not taxed."

"Section 181. The legislative assembly shall pass all laws necessary to carry out the provisions of this article."

"The object of construction, as applied to a written constitution, is to give effect to the intent of the people in adopting it. In the case of all written laws, it is the intent of the lawgiver that is to be enforced." 1 Cooley, Const. Lim. 8th ed. pp. 124, 125. In construing a constitution it must be presumed that the language has been employed with care and precision. The representatives of the people who framed the constitution, and the people who adopted it, are presumed to have expressed themselves in measured and careful terms corresponding with the immense importance of the powers delegated or restricted. It is presumed that every section, every sentence, every phrase and every word was placed in the constitution deliberately to accomplish some specific and definite purpose which would not have been accomplished if the same had not been inserted in the constitution. In considering a constitution "with a view to its interpretation, the thing which we are to seek is the thought which it expresses." 1 Cooley, Const. Lim. 8th ed. p. 127.

The tax referred to in § 180 of the Constitution is a tax on persons. The sections immediately preceding § 180 in Article 11 of the Constitution (relating to revenue and taxation) aside from providing that "the legislative assembly shall provide for raising revenue sufficient to defray the expenses of the state for each year," (Const. § 174) and shall exempt certain property from taxation (Const. § 176) constitute limitations or restrictions upon the legislative power to deal with the subject of taxation. There is a strong presumption amounting almost

to a moral certainty, that the framers of the constitution, and the people who adopted it, had a deliberate purpose in mind which they thought could and would be accomplished only by inserting § 180 in the constitution. As construed in the prevailing opinion, however, § 180 of the constitution was wholly useless. It served no purpose whatsoever. According to the view of the majority the constitution would have meant precisely the same if § 180 had not been inserted. The constitution should be construed so as to give effect to the purpose the framers of the constitution and the people who adopted it had in mind and it seems to me that when the language of section 180 is construed in light of the other sections of the article of which it is a part, that "the thought which it expresses" is that if it sees fit so to do the legislative assembly may provide for the levy and collection of a poll tax, but it may provide for a levy only in the amount and upon the persons specified in the section.

In the prevailing opinion reliance is placed upon the decisions in Walcott v. People, 17 Mich. 68, and in Vertrees v. State Bd. of Elections, 141 Tenn. 645, 214 S. W. 737. It seems to me, the constitutional provisions and statutory enactments involved in those cases were so different from those involved in this case that these cases have no controlling weight upon the questions involved here.

NUESSLE, J. I concur in the foregoing dissent.