No. 35,210

KATE SMITH, *Plaintiff*, v. O. A. SNELL, *Defendant*.

(117 P. 2d 567)

Opinion filed October 11, 1941.

*Guido E. Smith*, of Colby, for the plaintiff.

*E. F. Beckner* and *Leon N. Roulier*, both of Colby, for the defendant.

*Jay S. Parker*, attorney general, *A. B. Mitchell* and *Jay Kyle*, assistant attorneys general, as *amici curiae*.

The opinion of the court was delivered by

Hoch, J.:ˑ In view of the public interest involved, this case was considered, decided, and the decision announced soon after it was heard at the July session. It was then stated that the opinion would follow at a later date.

The action is an original proceeding in quo warranto, in which the plaintiff seeks to oust the defendant from the office of probate judge. The question presented is whether upon the death of a probate judge-elect, before the beginning of the term for which he has been elected and before he has qualified for the office, the governor has power to appoint someone to serve during the term for which the deceased was elected.

The defendant, O. A. Snell, was elected probate judge of Thomas county in November, 1938. At the election on November 5, 1940, he was a candidate for reëlection, for the term commencing January 13, 1941, and was opposed by Verni L. C. Smith. Smith received the greatest number of votes, but died on November 14. On November 16 the vote was regularly canvassed and Smith's election declared. On January 3, 1941, Governor Payne Ratner appointed Kate Smith, widow of Verni L. C. Smith, for the two-year term to which her husband had been elected. The defendant refused to surrender the office to her on January 13 and this action followed.

The pertinent provisions of law are as follows:

Article 4, section 2, constitution of Kansas:

"All county and township officers shall hold their offices for a term of two years and until their successors are qualified. . . ."

Article 3, section 12, constitution of Kansas:

"All judicial officers shall hold their offices until their successors shall have qualified."

G. S. 1939 Supp., 59-201:

"There shall be elected in each county a probate judge. He shall hold his office for two years. . . ."

G. S. 1939 Supp., 59-206:

"If a vacancy occurs in the office of probate judge, the governor shall appoint some qualified person to fill such vacancy until a successor shall be elected according to law."

Under the facts stated, was a vacancy created to which the governor could appoint, or does the incumbent continue to hold the office, under the provisions of the constitution and statutes, *supra,* until a successor is duly elected and qualified?

In addition to briefs by plaintiff and defendant, we have been furnished with a brief by the attorney general, as *amicus curiae*, on behalf of the state. While the decisions from other jurisdictions, to which our attention is called, are of interest, they are in many cases based upon specific provisions of law materially different from our own. They would, however, call for careful examination, if the question before us were being here considered for the first time. However, this is not a case of first impression. Although no case with precisely the same facts has heretofore been considered by this court, the issue has been before us in a series of cases beginning a few years after the constitution was adopted. We shall not, therefore, examine the authorities at length or the arguments that are now made or might be made as to a proper interpretation of the pertinent provisions of the constitution and statutes. In the absence of persuasive reason being shown for departing from the plain import of our prior decisions, we must regard what has been said on the issue by this court as controlling.

The issue was first before this court in the early case of *Borton v. Buck*, 8 Kan. 302. At an election on April 3, 1871, one Frederick was elected a justice of the peace at Emporia for the term beginning on April 5. Frederick declined to qualify and on April 6 the governor appointed Buck, who qualified. Borton, who had been serving in the office, following his election two years before, brought action to oust Buck and to establish his own right to continue in the office. His contention was upheld by this court on the ground that no vacancy existed which the governor could fill by appointment and that under the provision of article 3, section 12 of the constitution, the incumbent, Borton, was entitled to hold over. The court said:

"*The first question is whether the election of Frederick and his refusal to qualify vacated the office held by the plaintiff. We think it did not.* We have no statute or constitutional provision in this state, as they have in some of the other states, providing that if the successor to any person in office shall fail to give bond or qualify that the office shall be deemed vacant. . . . On the contrary, we have a constitutional provision that declares that 'All judicial officers shall hold their offices until their successors shall have been qualified.' . . . This provision does not declare that a judicial officer shall hold his office until his successor shall refuse to qualify; or until after the time for him to qualify has elapsed; but it declares that such judicial officer shall hold his office until his successor shall have been qualified. . . . *Under this constitutional provision we think Borton, the plaintiff, continued to legally hold the office of justice of the peace, notwithstanding that his intended successor was elected and refused to qualify.* . . . Was the act of the governor appointing the defendant a justice of the peace valid? . . . The governor

can appoint judicial officers only to fill vacancies and his appointees hold only until the next regular election. . . . *Now the office in the present case was not vacant;* it was already filled, and legally filled. . . . But it is claimed by the defendant that the office was vacant in one sense, though filled in another when the said appointment was made. Even if this were true (and that words can be used in different senses cannot be denied), still *it was not vacant in the sense contemplated by the constitution.* . . . Our decision is that as Frederick never qualified he never became a justice of the peace, but that the plaintiff continued to hold the office; that he continued to be the justice of the peace, and that there was no vacancy in the office for the governor to fill." (Italics supplied.) (pp. 312-314.)

A year later, in 1872, in the case of *State, ex rel. Goodin, v. Thoman,* 10 Kan. 191, involving the office of district judge, the court cited the Buck case, and said: "At the expiration of a term there arises no vacancy which can be filled by appointment. An election must be had, or the then incumbent continues."

In *State, ex rel., v. Albert,* 55 Kan. 154, 40 Pac. 286, decided in 1895, a situation identical—except in one important particular—with the instant one was considered. One Parry was elected probate judge of Cowley county for the term beginning on January 14, 1895. On December 5, 1894, he filed his bond, which was duly approved, and also filed the statutory oath. On January 4, 1895, he died, and on January 10 one Johnson was appointed by the governor. The incumbent Albert refused to surrender the office, and action to secure the office was brought by the appointee Johnson. The case differed from the one before us in that the judge-elect had furnished bond and taken the oath and the decision against the incumbent was based squarely and entirely upon the fact that the judge-elect, by giving bond and taking the oath, had "qualified." It was ably contended in behalf of the incumbent that the death of the judge-elect before the beginning of the term for which he had been elected created no "vacancy" and that the mere taking of an oath and furnishing a bond in advance could confer no power upon the governor to make an appointment. But this court held otherwise, saying: "The successor of the defendant had been *elected and qualified.* He was, then, entitled to take possession of the office on the second Monday in January; and at that time, had he lived, the right of the defendant to occupy would have terminated. *The rights of the parties became fixed when Parry qualified.* . . . Parry's right to occupy the office thereafter had become full and complete. . . . Parry died. This event, however, conferred no new right on the

defendant. The election and *qualification* of Parry had put an end to his right to hold over." (Italics supplied.) (p. 160.)

In *Pruitt v. Squires,* 64 Kan. 855, 68 Pac. 643, an incumbent sheriff was permitted, as against an appointee of the governor, to hold the office not only for two regular terms but for an additional one-year special term occasioned by the passage of the biennial election law. In the opinion it was said that "it seems to be well settled that the indefinite portion of time indicated by the phrase 'until their successor shall be qualified' is as much a part of the term of office as the time during which the officer is entitled absolutely to hold." (p. 858.) But counsel for the state call attention to the later case of *Adkinson v. Noonan,* 110 Kan. 335, 203 Pac. 694 which specifically overruled the Pruitt case and denied to a county treasurer, who had served during two full terms, the right to hold over for another two years as against an appointee named by the county commissioners following the death of the treasurer-elect prior to the beginning of the term for which he had been elected. It seems to be the contention of counsel that by overruling the Pruitt case the statement heretofore quoted from that case was thereby repudiated. That does not necessarily follow. The basis of the decision in the Noonan case was the special provision of the constitution (art. 4, sec. 2) that "no person shall hold the office of sheriff or county treasurer for more than two consecutive terms." The Pruitt case was overruled because it involved the office of sheriff—one of the two offices to which the special prohibition applies. No such prohibition applies to the office of probate judge. Moreover, the very language of the Pruitt case which the state contends was wiped out by the Noonan case was repeated verbatim in support of the decision in the later case of *State, ex rel., v. Irey,* 116 Kan. 21, 24, 225 Pac. 1050.

In the Irey case the plaintiff had defeated the defendant who was running for reëlection as probate judge. The incumbent refused to surrender the office on the ground that the plaintiff was an alien and therefore not qualified to hold the office. The court sustained the incumbent's contention and he was permitted to hold the office for the succeeding term for which he had been defeated in the election. While the case lends some support to defendant's position here, it must be conceded that standing alone it would not be controlling in this case, inasmuch as it did not involve the rights of a gubernatorial appointee, the issue being only between an incumbent and an alien opponent who had won in the election.

Similar to the Irey case is the case of *Jansky v. Baldwin,* 120 Kan. 332, 243 Pac. 278. The plaintiff there, holding the office of county superintendent, was defeated for reëlection by the defendant. She brought action to establish her right to continue in office, even though defeated, on the ground that her successful opponent did not have the educational equipment required by statute and therefore could not qualify for the office. Her contention was upheld. Again it may be noted, however, that no rights of an appointee were involved as in the case before us. Nonetheless, the decision clearly leans toward the position taken by the instant defendant.

The issue was to a certain extent again involved in the case of *Markham v. Cornell,* 136 Kan. 884, 900, 901, 18 P. 2d, 158. The facts, however, being quite different from those before us, no helpful purpose would be served by any extended reference to the case. It may simply be noted that the Irey case, *supra,* was there cited with approval, as were cases from Michigan, Arkansas, Iowa, Utah and Missouri, with similar holdings. In the Iowa case there cited (*State v. Carvey,* 175 Ia. 344) the rule was stated that " 'where a reëlected incumbent dies before entering upon the new term, his death creates a vacancy in the term which he was then serving, but not in the term upon which he had not yet entered.' (p. 351.) " In other words, the appointee named to fill out the unexpired term would hold over during the succeeding term as against one claiming as an appointee for the new term. Whether that case might be distinguished from the instant case on the ground of dissimilar provisions of law involved we need not examine. In any event, the case can furnish no support for the present plaintiff.

Counsel for the plaintiff urges the fact that Verni L. C. Smith, the successful candidate, died before the vote had been officially canvassed and was thereby prevented from qualifying as the successful candidate did in the Albert case, *supra.* That unfortunate fact, however, cannot change the legal effect of failure to "qualify." The constitutional provision is unequivocal. The same comment must be made with reference to the argument made by the state that weight should be given to the fact that the defendant had been defeated for reëlection by the vote of the people. That fact may make the result appear anomalous, but it is obviously without legal effect upon the status of the parties as determined by the unqualified provisions of the constitution.

Following the trail laid out by our former decisions, judgment must be entered for the defendant. It is so ordered.