STATE of North Dakota ex rel. Frank E. FOUGHTY, Petitioner,

v.

Ray R. FRIEDERICH, Respondent.

No. 7942.

Supreme Court of North Dakota.

April 18, 1961.

Melvin Christianson, Minnewaukan, for petitioner.

John C. McClintock and Conrad J. Ziegler, Rugby, for respondent.

MORRIS, Judge.

The relator, Frank E. Foughty, presented to this court an application for leave to file an information in quo warranto, supported by the affidavit of the relator and a proposed information. The application and its supporting papers indicate that the relator, Foughty, claims to be entitled to the office of Judge of the Second Judicial District of the State of North Dakota which office is now in the possession of Ray R. Friederich whom we will refer to as the

respondent and who claims to be the lawful incumbent of the office.

This Court issued its order, directed to Friederich, to show cause why the request of the relator should not be granted. Upon the return day prescribed in the order, the respondent appeared in person and by counsel and filed a return. In this return it was stated that the information might be construed as a stipulation of facts in this proceeding, but respondent denies the application of statutes upon which relator relies and the legal conclusions based thereon, and asserts that under the admitted facts he, and not the relator, is the legal incumbent of the contested office and has the right and lawful authority to hold the same until his successor has been duly elected and qualified. In view of the record thus presented, if the information states a case warranting our assumption of jurisdiction, we will proceed to a determination of the issues submitted and decide who is entitled to hold the contested office.

At the November general election of 1960, Roland A. Heringer was elected a judge of the Second Judicial District for the term to commence on the first Monday in January 1961. The then incumbent to the office was Asmundur Benson whose term would normally expire on January 2, which was the first Monday in January. After being declared elected but before qualifying for the office, Mr. Heringer died on December 23, 1960. Before the term of Judge Benson expired, he resigned, and the then Governor of the State, John E. Davis, appointed the respondent, Ray R. Friederich, to fill the vacancy created by the resignation of Judge Benson, which appointment recited that the appointee would serve until his successor was elected and qualified. The respondent took possession of the office pursuant to the appointment by Governor Davis and continues its occupancy.

Governor William L. Guy had succeeded Governor Davis to the governorship of the State on the first Monday of January 1961.

Ten days thereafter and on January 13, 1961, Judge-elect Heringer having failed to qualify within the time prescribed by Section 44–01–03 NDCC, Governor Guy declared that a vacancy existed in the district judgeship. On February 21, 1961 Governor Guy appointed the relator, Foughty, to fill the declared vacancy. The relator filed an oath of office pursuant to the appointment and now contends that he is the duly appointed and qualified Judge of the Second Judicial District and as such is the rightful holder and is entitled to possession of the office.

Lest the legal issues before us be obscured by the fact that the respondent, Friederich, is the appointee of former Governor Davis, and that the relator, Foughty, is the appointee of present governor, Governor Guy, we would state at the outset that Judge Benson's resignation created a vacancy, under the provisions of Section 44–02–01 NDCC, which Governor Davis was authorized to fill under the provisions of Section 44–02–03 NDCC, which provides that:

"Any vacancy in a state or district office, except in the office of a member of the legislative assembly, shall be filled by appointment by the governor."

The respondent qualified by filing his oath of office on December 31, 1960. He thereby became the incumbent of the office from which Judge Benson had resigned. He was endowed with all the rights of the office formerly held by Judge Benson, including the right to hold over until his successor was qualified. He became possessed of the same tenure of office as Judge Benson would have had if he had not resigned.

Section 87 of the North Dakota Constitution vests in the Supreme Court power to issue original and remedial writs, including writs of quo warranto. This is a discretionary power which may not be invoked as a matter of right. As to quo warranto proceedings, it is limited to cases.

involving the sovereignty of the State, its prerogatives or franchises, or the liberty of a citizen, and this Court will determine for itself in each case whether that particular case is within its jurisdiction. State ex rel. Lyons v. Guy, N.D., 107 N.W. 2d 211; State ex rel. Johnson v. Myers, 74 N.D. 678, 19 N.W.2d 745; State ex rel. Moore v. Archibald, 5 N.D. 359, 66 N.W. 234.

The general nature of this controversy is one that falls within the power vested in the Supreme Court by Section 87 of the Constitution.

Frank E. Foughty is a private relator who has a personal and special interest in the controversy. He has made an application to the Attorney General of the State to institute these proceedings. The Attorney General refused to proceed, but gave his permission to the relator to institute the requested proceedings, as relator, in the name of the State of North Dakota. It is clear that the subject matter is one over which we should take jurisdiction. State ex rel. Erickson v. Burr, 16 N.D. 581, 113 N.W. 705.

The respondent having stipulated and conceded in his return that the facts set forth in the relator's application, affidavit and proposed information are true, the issues presented are entirely those of law and we will proceed to determine not only whether the information should be filed, but also whether the relator must prevail or fail in his challenge to the right of the respondent to retain the office in question under the admitted facts and the law applicable thereto.

The district judge is a constitutional officer. We therefore go to the Constitution to ascertain whether it prescribes his term and tenure of office. Section 104 of the Constitution as originally adopted provided:

"The state shall be divided into six judicial districts, in each of which there shall be elected at general elec-tions, by the electors thereof, one judge of the district court therein, whose term of office shall be four years from the first Monday in January succeeding his election and until his successor is duly qualified. * * *"

On June 25, 1930, the electors of the State amended Section 104 to read:

"The state shall be divided into not less than six judicial districts, in each of which there shall be elected at general elections by the electors thereof one or more judges of the district court therein as may be provided by law. The term of office of a judge of the district court hereafter elected shall be six years from the first Monday in January succeeding his election and he shall hold his office until his successor is duly qualified. At the general election in 1932 there shall be elected as many judges as there are judgeships to be filled in each judicial district; the candidate receiving the highest number of votes shall be elected to a term of six years, the candidate receiving the next highest number of votes shall be elected to a term of four years, and in case three judges are to be elected, the candidate receiving the next highest number of votes shall be elected to a term of two years, and thereafter each judge shall be elected to a term of six years."

On November 8, 1960, when the general election was held, the office of Judge of the Second Judicial District which is now in question was held by the duly elected incumbent, Judge Benson, who was entitled to hold the office under the provisions of the Constitution until the first Monday in January 1961, and until his successor was duly qualified. The relator contends that a vacancy was created in the office when Judge-elect Heringer, although deceased, failed to qualify on or before the first Monday in January 1961, or within ten days thereafter, as prescribed by Section 44–01–03 NDCC. To sustain his con-

tention he points to a legislative enactment, Section 44–01–04 NDCC, which provides:

"If any person elected to any state, district, or county office shall fail to qualify and enter upon the duties of such office within the time fixed by law, such office shall be deemed vacant and shall be filled by appointment as provided by law. * * *"

He also cites Section 44–02–03 NDCC, which empowers the Governor to fill by appointment vacancies in state or district offices except the office of a member of the legislative assembly. Having received an appointment by the Governor and having filed an oath of office, the relator asserts that he is the lawful and qualified successor and as such is entitled to the office.

■ We will approach our problem by quoting text statements from recognized authorities.

"Where the legal incumbent of an office is authorized by law to hold over at the expiration of the term until his successor is elected and qualified, the period of his holding over is as much a part of his tenure of office as the regular period fixed by law; the office is held by the same title and by as high and lawful a tenure after the prescribed term, until the title of a duly elected successor attaches, as before and during such term, and a vacancy in such term can occur only in one of the ways in which it can occur during the regular term." 67 C.J.S. Officers § 48c.

"The word 'vacancy' has no technical meaning; an office is vacant whenever it is unoccupied by a legally qualified incumbent who has a lawful right to continue therein until the happening of some future event." 67 C.J.S. Officers § 50a.

The same authority continues:

"An office becomes vacant by the death of the incumbent during his term of office; but, as discussed supra § 48, a vacancy in an office is not deemed to occur as a result of the death of one elected to office before the beginning of the new term where deceased has not qualified and where the term of the incumbent extends until a successor has qualified."

In 42 American Jurisprudence, Public Officers, Section 136, in discussing the death of a candidate or officer elect, it is said:

"In many jurisdictions it is held that the death of a person before he has qualified according to law to fill an office to which he was elected does not create a vacancy, if the incumbent of the office is authorized to hold over until his successor shall have qualified. Elsewhere a contrary view is taken. The rule is generally followed, also, that the death of an officer elect before he qualifies causes a vacancy where the incumbent is not entitled to hold over. By the apparent weight of authority, it is held that where one elected for an office dies after he has qualified and before the commencement of his term, a vacancy is created in the new term which may be filled as by law provided, for where the successor has duly qualified, the right of the one then in office to hold over after the expiration of his definite term has ceased, and, having ceased, is not revived by the subsequent death of the successor."

In an annotation in 164 A.L.R., on page 1249, it is said:

"The greater number of cases have held that during the period in which a public officer holds over after the expiration of his term, under constitutional or statutory authority entitling him to do so until the election and qualification of a successor, there is

no vacancy in office which may be filled by an interim appointment."

And in another annotation in 74 A.L.R., on page 486, we find that:

"In a majority of jurisdictions, the rule obtains that the death or disability of an officer-elect before qualifying does not create a vacancy in the office which may be filled by the appointing power, since he never occupied the office, and that under the provision that an incumbent shall hold his office until his successor is elected and qualified the prior incumbent is entitled to continue in the office until the election and qualification of his successor."

■ Having quoted general authority, we now consider specific cases and language used in our constitutional provisions. Many cases involve constitutional or statutory provisions that state that the period of holding over shall be "until his successor is elected and qualified," while both the original provision of Section 104 of the Constitution and the section as amended use the language "until his successor is duly qualified." It may be noted also that the Constitution provides that officers of the executive department shall be elected for specified terms and until their successors are elected and duly qualified. Sections 71, 72 and 82, N.D. Constitution. Section 173 makes a similer provision with respect to county officers. The proper construction to be placed upon the phrase "until his successor is duly qualified" is that a successor in order to qualify must be one chosen in the manner provided in the Constitution for filling the office by a regular incumbent unless the Constitution itself provides a different method for choosing a successor. Our Constitution provides for the choice of district judges by election and not appointment. We think that interpretation was put on the phrase by the framers of the Constitution themselves in Section 16 of the Schedule that directed the transition from territorial to state gov-

ernment. That section provided, with respect to judges of the district court who had, under the territorial government, been appointed and not elected, that:

"The judges of the district court who shall be elected at the election herein provided for shall hold their offices until the first Monday in January, 1893, and until their successors are elected and qualified."

There seems to be no reason why successors to the first judges should be elected and that successors to subsequently elected judges might be chosen by some other method. This appears also to have been the view of the legislature, for it has provided by repeated enactments that a judge of the district court should hold office for a designated number of years and until his successor is elected and has qualified. Chapter 103, Session Laws N.D. 1895; Chapter 116, Session Laws N.D. 1903; Chapter 159, Session Laws N.D. 1907; Chapter 169, Session Laws N.D. 1911; Chapter 167, Session Laws N.D. 1919. In Section 27–0502 NDRC 1943, the provision appears with the word "and" changed to "or," but the note of the Code revisioners indicates that no change of meaning was intended. That section was incorporated in the Century Code, and provides as follows:

"There shall be elected in each judicial district of this state the number of judges for such district provided for by law. Any judge so elected shall take office on the first Monday in January next succeeding his election and shall hold office for six years or until his successor is elected and has qualified." Section 27–05–02 NDCC.

In Pittman v. Ingram, 184 Ga. 255, 190 S.E. 794, 795, the court had under consideration a provision of the Constitution of Georgia 1877, art. 6, § 3, par. 1 that "There shall be a Judge of the Superior Courts for each judicial circuit, whose term of office shall be four years, and until

his successor is qualified." Pittman had been elected judge of a circuit for a regular term of four years beginning January 1, 1933, and ending December 31, 1936. In the November 1936 election, McFarland was elected for the ensuing term. McFarland died on November 25, 1936, without having taken the oath of office and without having received a commission. Pittman continued to occupy the office as one holding until his successor was qualified. Had McFarland lived, his term would have begun January 1, 1937. On January 4, 1937 the governor declared a vacancy and appointed Ingram to fill it. In holding that Pittman continued in office, that there was no vacancy, and that the governor's attempted appointment was unauthorized, the court said:

"The constitutional design to fill the offices of judges of the superior courts by vote of the qualified electors must be carried in mind. It is distinctive from executive function, and manifests a policy to select the judges by the electorate. This object should also be borne in mind. When a person has been elected judge for a full term and has qualified by taking the oath and receiving his commission, he becomes judge *whose term of office* shall be four years, *and until his successor is qualified.*' By these plain words the term of the electorate's choice for judge continues during the prescribed four years and thereafter 'until his successor is qualified.' This tenure of office is beyond the reach of the executive department of government, and can not be interrupted by the Governor while it endures. This provision of the Constitution can not be taken out by mere legislative act or by construction; nor can it be obviated by executive order. It must be given effect. If during such term of a judge in commission a vacancy occurs 'by death, resignation, or otherwise,' the vacancy 'shall be filled by appointment of the Governor until the first day of Jan-

uary after the general election held next after the expiration of thirty days from the time such vacancy occurs, at which election a successor for the unexpired term shall be elected.' This power of executive appointment is for an emergency, and can be exercised only in case of a vacancy. It can not be exercised to be effective while a duly commissioned incumbent is in office. * * *

"Under the foregoing authorities, and especially the decisions in Gormley v. Taylor (44 Ga. 76) and Shackelford v. West, supra (138 Ga. 159, 74 S.E. 1079), the word 'successor' in the phrase 'until his successor is qualified' must be construed to mean a successor chosen according to 'the regular method'; and at the present time the regular method of selecting judges of the superior court is election by the people."

See also Mitchell v. Pittman, 184 Ga. 877, 194 S.E. 369, and Roan v. Rogers, 201 Ga. 696, 40 S.E.2d 551.

In Commonwealth ex rel. Broom v. Hanley, 9 Pa. 513, it was held that the death of the person elected to fill the office of Clerk of the Orphans' Court before he had qualified did not create a vacancy. The office to which the deceased had been elected was one of several concerning which it was provided by the constitution that the incumbents "shall hold their offices for three years, if they shall so long behave themselves well, and until their successors shall be duly qualified." Const. 1838, art. 6, § 3. The governor declared a vacancy and made an appointment. The original incumbent claimed the right to hold over and the appointee brought quo warranto proceedings to oust him. In holding that there had been no vacancy and therefore no valid appointment, it was pointed out that the original incumbent was elected and commissioned not only for three years, but until his successor was duly qualified, which included

being elected and commissioned. The court said:

> "That the respondent is entitled to hold until his successor is duly qualified, are the words of the constitution.
>
> "Was there a successor duly qualified within the spirit of the constitution? is the point on which the question mainly, if not entirely depends. Being duly qualified in the constitutional sense, and in the ordinary acceptation of the words, unquestionably means that he, the successor, shall possess every qualification; that he shall, in all respects, comply with every requisite before entering on the duties of the office; that, in addition to being elected by the qualified electors, he shall be commissioned by the governor, give bond as required by law, and that he shall be bound by oath or affirmation (vide 8th article of constitution) to support the constitution of the commonwealth, and to perform the duties of the office with fidelity. Until all these pre-requisites are complied with by his successor (for if you can dispense with one, you can dispense with all), the .respondent is de jure, as well as de facto, the clerk of the Orphans' Court."

In Smith v. Snell, 154 Kan. 187, 117 P.2d 567, the first paragraph of the syllabus by the court says:

> "The death of a probate judge-elect, before the beginning of the term for which he was elected and without having qualified for the office, does not create a vacancy as to such term which may be filled by appointment by the Governor under the provisions of G.S. 1939 Supp. 59–206."

This decision was reached on consideration of these statutory and constitutional provisions. Article 4, Section 2, Constitution of Kansas:

> "All county and township officers shall hold their offices for a term of two years and until their successors are qualified * * *."

Article 3, Section 12, of that Constitution provides:

> "All judicial officers shall hold their offices and until their successors shall have qualified."

Under G.S.1939 Supp. 59–201:

> "There shall be elected in each county a probate judge. He shall hold his office for two years * * *."

Under G.S.1939 Supp. 59–206:

> "If a vacancy occurs in the office of probate judge, the governor shall appoint some qualified person to fill such vacancy until a successor shall be elected according to law."

The decision was reached, after the court had considered and analyzed a number of prior Kansas cases, that the death of the judge elect created no vacancy.

In State ex rel. Hoyt v. Metcalfe, 80 Ohio St. 244, 88 N.E. 738, it is held that when the death of a person elected to an office occurs before he qualifies it does not create a vacancy where a constitution provides that an incumbent shall hold for his term and until the election and qualification of a successor, and that the extended tenure is as much a part of the incumbent's term of office as is the fixed period.

■ The foregoing cases involve constitutional provisions and treat the phrase "until a successor is qualified" or its equivalent as referring to a successor chosen in the same manner as the original incumbent was chosen or in a manner specifically provided by the constitution. Upon the authority of these cases it must also be stated that the additional tenure of the hold-over period after the expiration of the specified term is a constitutional tenure and as long as it endures there can be no vacancy to be filled by an appointive power unless the constitution specifically so provides.

The same principle we have stated with respect to the hold-over period under constitutional provisions also prevails with respect to statutory offices and constitutional offices where the determination of the terms or tenure has been left to legislative action.

In State ex rel. Freeman v. Carvey, 175 Iowa 344, 154 N.W. 931, 934, a statute provided that every officer elected or appointed for a fixed term should hold office until his successor was elected and qualified (Code, § 1265, I.C.A. § 69.1). An incumbent was reelected to a succeeding term. He died before the beginning of his new term. The vacancy thus created in the old term was filled by appointment. It was held that the appointee was entitled to hold over for the ensuing term. The court stated:

"* * * the great weight of authority is that, where a re-elected incumbent dies before entering upon the new term, his death creates a vacancy in the term which he was then serving, but not in the term upon which he had not yet entered."

A similar conclusion was reached by the Supreme Court of South Dakota in State ex rel. Hellier v. Vincent, 20 S.D. 90, 104 N.W. 914.

In Grinnell v. Bunker, 115 Me. 108, 98 A. 69, a register of deeds-elect died before qualifying and before the term of office for which he was elected began. A statute provided that the register of deeds should hold his office for four years from the first day of the next January and until another was chosen and qualified (Rev.St. 1903, c. 11, § 2). Grinnell claimed that there was a vacancy in the office of the register of deeds and that he was entitled to have his name on the ballot of the primary election as a candidate to fill the vacancy. The court held there was no vacancy and that the hold-over register of deeds was the rightful incumbent to the office.

In State ex rel. Boone County Attorney v. Willott, 103 Neb. 798, 174 N.W. 429, in the syllabus by the court it is said:

"As a general rule, the appointing power has no vacancy to fill upon the expiration of a term of office, where the incumbent is entitled to hold over until his successor is elected and qualified."

This Court has never had before it a case involving a claimed vacancy based on the death of an official before qualification and before the beginning of the term for which he was elected. However, in State ex rel. Bickford v. Fabrick, 16 N.D. 94, 112 N.W. 74, 75, the court considered the provision in Section 764, Revised Codes 1905, which stated that there should be elected in each county a superintendent of schools "whose term of office shall be two years, commencing on the first Monday in January following his election, and until his successor is elected and qualified." The court said:

"Under this provision of the statute it appears clear that it provides, not simply for a term of two years, but for two years and any additional time which may elapse before a successor is elected and qualified. The duly elected and qualified superintendent, after the expiration of the two years from his entering upon the duties of the office, unless a successor was duly elected and qualified, was entitled to occupy the office and perform its duties with precisely the same force and effect as though he himself had received the new certificate of election and qualified anew. That this is the law is well established by a vast number of authorities. Under a statute like ours, holding over pending the election and qualification of a successor is as much a part of the term of office to which the superintendent is elected as are the first two years, where he continues in office."

Section 78 of the North Dakota Constitution provides that:

"When any office shall from any cause become vacant, and no mode is provided by the constitution or law for filling such vacancy, the governor shall have power to fill such vacancy by appointment."

This provision does not empower either the governor or the legislature to *create* vacancies but only to *fill* them. Thus it refers only to vacancies in fact such as those resulting from the death, disability or resignation of an incumbent or his abandonment of the office. Nowhere in our Constitution is it provided that either the governor or the legislature may create or declare a vacancy in a constitutional office where one does not naturally exist.

We must not be confused in this respect by decisions from states where the constitution specifically authorizes the legislature to declare vacancies as well as fill them as, for example, in Michigan, where:

"The legislature may provide by law the cases in which any office shall be deemed vacant and the manner of filling vacancies, where no provision is made in this constitution." Article 16, Section 5, Michigan Constitution.

See Toy ex rel. Elliott v. Voelker, 273 Mich. 205, 262 N.W. 881. The North Dakota Constitution contains no similar provision. In this state a vacancy does not exist in a constitutional office so long as the office is supplied in a manner provided by the Constitution with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it. Holtan v. Beck, 20 N.D. 5, 125 N.W. 1048; 42 Am.Jur., Public Officers, Section 131.

█ We go now to our Constitution to determine the nature of the tenure by which the respondent held office at the time the relator was appointed. The original Section 104 of the Constitution provided for the election in each judicial district of a district judge "whose term of office shall be four years from the first Monday in January succeeding his election and until his successor is duly qualified; * * *." In 1930 an extensive amendment was adopted. We have heretofore quoted this amendment in full. At the time of the adoption of the amendment some of the judicial districts had two judges and others had three, all of whom were elected for four-year terms. This resulted, in some instances, in the expiration of the terms of two judges at the same time in the three-judge districts. The main object of the amendment seems to be to extend the terms of all district judges to six years with the result that the terms of no two judges expired at the same time in the same district. This required an extensive revision of Section 104. In the course of that revision the language pertaining to the length of time that a judge would hold his office was made and it was stated that "The term of office of the judge of the district court hereafter elected shall be six years from the first Monday in January succeeding his election and he shall hold his office until his successor is duly qualified." This change in language is pointed to as indicating that after the adoption of the amendment a judge's term of office was definitely limited to six years and that the further provision that "and he shall hold his office until his successor is duly qualified" merely created a temporary period of holding over during a vacancy that might be filled by executive appointment. We do not approve this interpretation of the amendment.

█ Any vacancy that warrants an appointment must be a vacancy in the office, not in the term. No vacancy occurs while the office is being held by one occupying it under a tenure prescribed by the Constitution unless the Constitution so provides. As we have pointed out, the Constitution recognizes no vacancies except those which are vacancies in fact. It does not create or declare vacancies in constitutional offices nor does it confer upon the legisla-

ture authority to do so. The amended section provides that a district judge not only shall be elected for a term of six years but that he shall *hold his office* until his successor is duly qualified. In order to qualify, the successor must be chosen by the method prescribed by the Constitution. The only method that it prescribes is by election when the office is occupied by an incumbent holding under a lawful tenure. A district judge who holds his office by permission and direction of the Constitution is such an incumbent and while he holds that office there is no vacancy in fact.

It is suggested that the change in wording made by the amendment as compared with that used in the original section indicates a change in meaning, purpose and result. If the amendment had changed only the language used with respect to the term of office this argument would have considerable weight. However, the entire section was rewritten and no mention made of vacancies. Although it can be argued that under the original section the term of office extended until a successor was qualified and that under the amendment it may be said that the term ends at the expiration of six years from the first Monday in January following election and that the hold-over period is not strictly a part of the term, that period is nevertheless a part of the incumbent's constitutional tenure which endures until his successor is qualified, and being a constitutional tenure it is not terminated until his successor has been chosen in the manner prescribed by the Constitution.

The use of different words does not necessarily imply a different meaning or a different result. The same thought may be expressed or the same result indicated by the use of different words or phrases. Whether different expressions have the same or a different meaning or purpose rests primarily upon the meaning of the words themselves and the context in which they are used. When, as here, it is provided that an incumbent shall hold his office until his successor is duly qualified, it cannot be said to imply that a vacancy exists at the same time that he holds the office. Such a result would be contrary to the reasoning and holding of a great majority of the cases.

There is, however, a thin line of cases which reach a result contrary to our determination. Most of these cases are from Virginia. One of the most recent and comprehensive is Burnett v. Brown, 194 Va. 103, 72 S.E.2d 394, in which earlier Virginia cases are reviewed and discussed. In Virginia, a Commonwealth attorney is a constitutional officer. Such an officer had been elected but died before he qualified and prior to the beginning of his term of office. The power to fill vacancies in that office was vested in the circuit court. Section 112, Article VII, of the Virginia Constitution provided that constitutional officers "shall enter upon the duties of their offices on the first day of January next succeeding their election, and shall hold their respective offices for the term of four years, * * *." An entirely separate section (Section 33, Article II of the Constitution) provided that:

"All officers, elected or appointed, shall continue to discharge the duties of their offices after their terms of service have expired until their successors have qualified."

The Virginia Constitution also contains a provision that:

"* * * the General Assembly may declare the cases in which any office shall be deemed vacant where no provision is made for that purpose in this Constitution." Section 56, Article IV.

As we have heretofore noted, the North Dakota Constitution confers no such power upon our legislature.

Pursuant to the power conferred upon it by the Constitution, the Virginia Gen-

eral Assembly provided in Code Section 15–475 that:

"Every county and district officer elected by the people, * * * unless otherwise provided by law, * * * shall, on or before the day on which his term of office begins, qualify by taking the oath prescribed by section 49–1 and give the bond, if any, required by law, * * *."

Code Section 15–477 of the Virginia Code states that:

"If any such officer fail to qualify and give bond, as required by the preceding section, on or before the day on which his term begins, his office shall be deemed vacant; * * *."

The Virginia court distinguishes its constitution from those considered in the cases following the general rule that we have heretofore discussed by saying:

"In all of these cases the term of office was fixed at a definite period plus an indefinite period—until his successor shall have been legally selected and qualified. This language is quite dissimilar to the provision of our Constitution which fixes the term of attorneys for the Commonwealth at four years with the added provision that they continue to discharge the duties of their offices after their terms have expired until their successors have qualified." [194 Va. 103, 72 S.E.2d 400]

The distinction between the general rule and the Virginia rule is not applicable to our case for two reasons. The first is that the language of our amended Section 104 is more positive when it states that the incumbent shall hold his office until his successor is qualified than is the Virginia provision that incumbents should continue to discharge the duties of their offices after their terms have expired until their successors have qualified. The second, and equally potent, reason is that our provision for holding over is not only a part of the same Section, but a part of the same sentence that provides for the definite term of six years, while the Virginia provision for the continued discharge of duties applies to all officers elected or appointed and is set out in an entirely separate section of the constitution. Furthermore, we must not overlook the fact that the Virginia Constitution vested in the General Assembly the power to declare the cases in which an office should be deemed vacant, and pursuant to that provision the Assembly had declared that where an officer failed to qualify, his office should be deemed vacant.

The relator has cited State ex rel. Sathre v. Moodie, 65 N.D. 340, 258 N.W. 558, 567. That decision is not applicable to the facts or law in this case and is not in any manner inconsistent with the conclusion we have reached in this decision. The respondent, Moodie, who had been elected governor and who had assumed the duties of that office, was held not to possess the qualifications required by the Constitution and was required to surrender the office of governor to Lieutenant Governor Welford who had been elected at the same election as Mr. Moodie. In reaching that conclusion the court considered the following constitutional provisions:

Section 71. "The executive power shall be vested in a governor, who shall reside at the seat of government and shall hold his office for the term of two years and until his successor is elected and duly qualified."

Section 72. "A lieutenant governor shall be elected at the same time and for the same term as the governor. In case of the death, impeachment, resignation, failure to qualify, absence from the state, removal from office, or the disability of the governor, the powers and duties of the office for the residue of the term, or until he shall be acquitted or the disability removed, shall devolve upon the lieutenant governor."

In the Moodie case we said:

"Even though the general election of 1934 was a legal nullity insofar as the election of a governor is concerned, we must bear in mind that there was a legal and valid election of a lieutenant governor. * * *

"A hold-over provision applies only when there is no qualified successor; but in this case there is a qualified successor. The framers of the constitution, having in mind the great importance of the office of governor, provided not merely for one successor; but they provided for another successor (N.D.Const. Sec. 72) in case the first should, for any reason, be unable to serve, and for still another in case the second should also be unable to serve. Const.N.D. § 77.

"If the governor elect fails to qualify or is disqualified, the lieutenant governor is the successor in office to the former governor or acting governor. The election and qualification, of a governor or of a lieutenant governor in event the governor elect is disqualified, meets the requirement of Sec. 71 that the governor serves until his successor is elected and duly qualified."

The point of difference between the Moodie case and the one at bar is that the Constitution itself specifically provides that the lieutenant governor succeeds to the duties of the office of governor if the governor-elect fails to qualify, while in the case at bar a district judge is directed to hold his office until his successor is duly qualified, and the only means provided by the Constitution for supplying his successor is by election.

Much of the argument of counsel in this case is devoted to the interpretation and application of statutes. We would point out that our statutes are confusing and conflicting with respect to the terms and vacancies of the office of district judge. Section 27-05-02 NDCC provides:

"There shall be elected in each judicial district of this state the number of judges for such district provided for by law. Any judge so elected shall take office on the first Monday in January next succeeding his election and shall hold office for six years or (and) until his successor is elected and has qualified."

Section 44-01-04 NDCC provides that if a person elected to a state, district or county office fails to qualify and enter upon his duties within the time fixed by law, the office shall be deemed vacant and shall be filled by appointment as provided by law. We need not attempt to resolve the conflict because the Constitution fixes the terms and tenure of district judges. There is no constitutional provision authorizing the legislature or the executive to provide for vacancies in law where they do not exist in fact. We have determined that under Section 104 of the Constitution, where a person is elected to the office of district judge and dies before he has qualified, no vacancy in fact exists because the office continues to be occupied by an incumbent whose constitutional tenure extends until his successor has been elected as the Constitution provides and has qualified. A potential successor was elected but death prevented his qualification. Judge Benson, had he not resigned, would have continued to hold the office. His resignation created a vacancy in fact which was filled by the appointment of Mr. Friederich whose appointment continues in force under the provisions of Section 44-02-08 NDCC until the expiration of the term in which the vacancy occurred and until the appointee's successor is elected and qualified. He continues to hold the office by the same constitutional tenure as did Judge Benson. The death and consequent failure of Mr. Heringer to qualify created no vacancy. The appointment of the relator is therefore without authority and void. The respondent, Friederich, continues to hold the office of Judge of the District Court of the Second Judicial District until his successor is

elected and has duly qualified. These proceedings in quo warranto are therefore dismissed.

SATHRE, C. J., and MORRIS and STRUTZ, JJ., and GEO. THOM, Jr., District Judge, concur.

TEIGEN, J., deeming himself disqualified did not participate, Honorable GEO. THOM, Jr., District Judge of the Fourth Judicial District, sitting in his stead.

BURKE, Judge (dissenting).

I dissent. The decision in this case rests entirely upon the construction that is to be given to section 104 of the constitution and section 44–01–04 NDCC and I am unable to agree with the construction the majority has placed on section 104 or their conclusion that section 44–01–04 is unconstitutional.

The critical language of section 104 of the constitution reads:

"* * * The term of office of a judge of a district court hereafter elected shall be six years from the first Monday in January succeeding his election and he shall hold his office until his successor is duly qualified. * * *"

Section 44–01–04 NDCC provides:

"If any person elected to any state, district, or county office shall fail to qualify and enter upon the duties of such office within the time fixed by law, such office shall be deemed vacant and shall be filled by appointment as provided by law."

It may be conceded at the outset of this discussion that the holdover tenure of a district judge is a part of his term and that such holdover tenure terminates only upon the contingency provided by the constitution for its termination, namely the qualification of a successor. In this state the legislature has provided for the selection of a successor by appointment in cases where the regularly elected successor fails to qualify and enter upon the duties of the office. The decisive question in the case is whether the legislature had the power to enact that statute.

A state constitution is not a grant of power. A state legislature has plenary powers and it may enact any law not expressly or inferentially prohibited by the state or national constitutions. State ex rel. Gaulke v. Turner, 37 N.D. 635, 164 N.W. 924; Aubol v. Engeseth, 66 N.D. 63, 262 N.W. 338, 100 A.L.R. 853. The majority opinion holds that there is an implied prohibition to enact the statute in question contained in the words "until his successor is qualified." It is their view that the word successor means only the person regularly elected pursuant to section 104 of the constitution, supra, that is to say: to a person elected as judge for a full term of six years. They would, in effect, provide that the failure of the regularly elected successor to assume his office would automatically create a holdover term of six years for the benefit of the incumbent. I cannot accept this view, the word successor as used in the phrase "until his successor is qualified" is entirely unmodified or limited by express language. No significance can be given to the word qualified, because as we said in Jenness v. Clark, 21 N.D. 150, 154, 129 N.W. 357, 358, "* * * the meaning of the word 'qualified' as thus used merely refers to the taking of the required oath of office and giving an official bond as required by statute where that is necessary." Ordinarily, of course, the regularly elected successor to an office qualifies and terminates the holdover tenure to his predecessor. I am sure that it was this contingency which was foremost in the minds of the writers of the constitution. The constitution, however, made no provision whatever for selecting a successor to a district judge whose regular term had ended and whose regularly elected successor had failed to qualify. I cannot see how it can be inferred from this oversight that no such

provision can be made by the legislature. A constitution cannot be expected to provide for every contingency. In fact it would not be a proper constitution if it did. And with respect to a state constitution, any area not covered by its provisions is a field for the exercise of the plenary power of the legislature.

There appears to me to be much confusion in the cases cited by counsel in this case in their discussion of the question of a vacancy in office and of the right of a legislature to declare a vacancy. In my opinion most of this discussion is entirely beside the point. There is no need to declare a vacancy in the term for which the nonqualifying officer was elected for that is an absolute vacancy as complete as a vacancy caused by death or resignation. There is no need to declare a vacancy in the tenure of the holdover officer because that tenure ends by constitutional limitation upon the qualification of a lawfully selected person to fill the vacancy in the succeeding term. Such lawfully chosen person becomes a successor to the holder of the preceding term.

The objection, that a provision for the selection of a person to fill the succeeding or vacant term of office is an unconstitutional limitation upon the term of the holdover officer, is invalid. Concededly the term for which a judge is elected includes both the primary or specific term and the holdover tenure if and when it comes into being. There is, however, a distinct difference in the nature of the two. The incumbent has a right to the primary term for a fixed period of time. Where this right is established by the constitution it may not in any way be limited by legislative action. On the other hand the holdover term is contingent and indefinite. It comes to the incumbent as a duty imposed upon him in the public interest so that there shall be no hiatus or interregnum in the occupancy of office. This interpretation of the constitutional language was adopted by this court in State ex rel. Sathre v. Moodie, 65 N.D. 340, 258 N.W. 558, at page 567, wherein we said "The purpose of a holdover provision is to conserve the public interest by preventing a vacancy in office. Such provision is not designed or intended to extend the tenure of office by an incumbent for his own benefit beyond the specified term." It follows that, since the holdover provision is not designed or intended to extend the tenure, such tenure, has no constitutional protection as to its duration. This tenure expires upon the happening of the contingency provided in the constitution for its termination. There is no constitutional limitation which would prohibit the legislature from providing for the happening of this contingency or of accelerating its arrival. In fact if the legislature did not so provide, the holdover provision would do exactly what we said in the Moodie case it was not intended to do, namely, "extend the tenure of the office of the incumbent for his own benefit." On the basis of this statement it may well be inferred that the constitution contemplated such a law. It was so held in State ex rel. Gibbs v. Rogers, 141 Fla. 237, 193 So. 435. However, to sustain the statute such an inference is unnecessary. It is sufficient if the statute is not prohibited.

The statute provides for filling the absolute vacancy in the succeeding term and thereby terminating the tenure of the holdover officer. Section 78 of the constitution provides:

> "When any office shall from any cause become vacant, and no mode is provided by the constitution or law for filling such vacancy, the governor shall have power to fill such vacancy by appointment."

This provision expressly recognizes the power of the legislature to provide for the filling of vacancies, unless provision is made for the filling of such vacancies by the constitution. The constitution makes no other provision for filling vacancies except with respect to the offices of governor and the supreme court judges. A provision that officers shall continue in office until their

successors are duly qualified, is not a limitation upon the power to fill vacancies in the succeeding term of any county or state office. In re Advisory Opinion to the Governor, 65 Fla. 434, 62 So. 363, 50 L.R.A., N.S., 365; People ex rel. Mattison v. Nye, 9 Cal.App. 148, 98 P. 241; State ex rel. Covington v. Thompson, 142 Ala. 98, 38 So. 679; Campbell v. Dotson, 111 Ky. 125, 63 S.W. 480; State ex rel. Finch v. Washburn, 17 Wis. 658; Adams v. Doyle, 139 Cal. 678, 73 P. 582; People v. Pillman, 284 Ill.App. 287, 1 N.E.2d 788; People ex rel. Mitchell v. Sohmer, 209 N.Y. 151, 102 N.E. 593, 46 L.R.A.,N.S., 1202. While there are decisions to the contrary I think the rule stated here is the better rule. The decisions which hold that there is no vacancy in an office, held in holdover tenure, which can be filled, when there exists an absolute vacancy in the succeeding term, bring about a result which was clearly not intended by our constitution and magnify the rights of such holdover officer far beyond what this court has said those rights are. Our constitution itself recognizes that the holdover period shall be terminated by a filling of the vacancy in the succeeding term. Section 71 of the constitution provides that the governor shall hold his office until his successor is elected and qualified. Section 72 of the constitution provides that if a regularly elected governor shall fail to qualify, the office shall devolve upon the lieutenant governor. If the theory of the cases, that hold that the fact there was no vacancy in the holdover term prevented the filling of the vacancy in the succeeding term, applied in this jurisdiction, these two sections would be contradictory. Certainly the lieutenant governor could not succeed to the governorship when there was no vacancy in the office because the holdover tenure could not be ended except by the qualification of one who had been regularly elected as governor. Here the constitution recognizes that a proper way to end a holdover term is to fill the vacancy in the succeeding term. That is all that section 41–01–04 does. It provides for the termination of the holdover tenures with respect to other offices in the same manner that the constitution terminates the holdover tenure in the office of governor. I think therefore that the power to enact such a statute is not only not denied but also that the statute itself is clearly within both the letter and the spirit of the constitution.

In my opinion the holdover term of Judge Friederich should be held to have terminated upon the qualification of Judge Foughty.